WAKEFIELD READY-MIXED CONCRETE CO., INC. *vs.*
STATE TAX COMMISSION.
(and three companion cases [1]).

Suffolk.   April 7, 1969. — May 5, 1969.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, & SPIEGEL, JJ.

*Taxation,* Sales and use tax, Industrial plant, Concrete mixer.

Replacement parts and machinery purchased by a concrete manufacturer for installation in the mixers or bodies or engines of its specially designed, diesel-powered concrete mixer trucks, in which the concrete, whether mixed in the mixers or placed therein after mixing, was kept fluid by continuous rotation of the mixers while in transit from the manufacturer's batching plants to the jobsites of the concrete buyers, were within the exemption from the use tax granted by St. 1966, c. 14, § 1, subsec. 6 (s) of "Sales of machinery, or replacement parts thereof, used directly . . . in an industrial plant in the manufacture, conversion or processing of tangible personal property to be sold."

APPEAL from a decision of the Appellate Tax Board.

*Herman Snyder (Steven J. Comen* with him) for the appellant.

*Francis J. Larkin* for Massachusetts Ready-Mix Concrete Institute, amicus curiae.

*Allan G. Rodgers,* Special Assistant Attorney General, for the appellee.

CUTTER, J.   This is an appeal from a decision of the Appellate Tax Board (the board) denying an abatement of use taxes assessed to the appellant (Wakefield) with respect to the use by it of replacement parts and machinery for its

---

[1] By stipulation, it is agreed that the issues of law with respect to similar items purchased in May, June, and July, 1966, are identical with those presented with respect to the excise on items purchased in April, and that the decision in three companion cases shall be governed by the decision in this case.

concrete mixer trucks purchased in April, 1966 (fn. 1). Wakefield has complied with all procedural requirements. The taxes have been paid. The sole question is whether replacement parts are within the exemption from use tax granted by St. 1966, c. 14, § 1, subsec. 6 (s),[2] which excluded from the impact of sales and use taxes, "Sales of machinery, or replacement parts thereof, *used directly . . . in an industrial plant* in the manufacture, conversion or processing of tangible personal property to be sold" (emphasis supplied).[3] The facts are stated upon the basis of the board's findings.

Wakefield manufactures and sells concrete from four batching plants in Massachusetts. Each such plant has buildings containing equipment used in making concrete. "At three . . . installations . . . measured amounts of dry material (sand, stone, and cement) and water [are placed] in a mixer . . . mounted on the frame of a specially designed, diesel-powered truck . . . . [T]he mixer is rotated by . . . the truck's diesel power. The truck is then dispatched to its destination. While the truck is in motion, the mixer continues to revolve, bringing the mixture to a plastic or fluid state in about fifteen or twenty minutes and thereafter the continuous rotation of the mixer prevents the raw concrete from setting. At the . . . job site, the raw concrete is then poured in place and allowed to . . . harden." At the "fourth installation . . . the materials are placed and revolved in a stationary mixer; the raw concrete is then poured in the . . . type of mixer truck . . . already described. The mixer rotates . . . while the truck is on its way to the job site so that the concrete will remain . . . fluid."

---

[2] The section now appears as G. L. c. 64H, § 6 (s), inserted by St. 1967, c. 757, § 1. For later amendments of § 6, see St. 1968, c. 502, § 1, and c. 711, § 1.

[3] The commission in its brief suggests that Wakefield's purchases of oil for motors and gears would be exempt, if at all, under St. 1966, c. 14, § 6 (r), which excludes from the impact of the excise "Sales of . . . fuel . . . consumed and used directly in . . . an industrial plant in the process of the manufacture of tangible personal property to be sold . . .." The brief correctly concedes that essentially the same issue arises under § 6 (r) as exists under § 6 (s). For convenience, we discuss the question primarily under § 6 (s).

The purchases concerning which use taxes were assessed were of "replacement parts and machinery for installation in those of . . . [Wakefield's] mixer trucks which operated almost exclusively from the three [first mentioned] installations wherein the mixing process takes place within the truck's mixer while the truck is traveling. Some of the items were for the mixers, others [were] for the bodies of the trucks, and the remainder were for use in connection with the truck's diesel engines . . . ."

The commission contends that the mixer truck machinery and replacement parts do not constitute items "used directly . . . in an industrial plant" within § 6 (s). It is argued that because the trucks are mobile, even though a manufacturing process is carried on within them while they are on the road, they do not meet the ordinary concept of an industrial plant. The commission further contends that replacement parts for the trucks, as distinguished from the mixers, should not be regarded as within the exclusion found in § 6 (s). Wakefield, on the other hand, contends that the replacement parts are for machinery used in manufacturing and that each mixer truck, either viewed separately as a unit or as connected with the batching location from which it operates, constitutes an industrial plant.

The legislative history affords no assistance in the interpretation of § 6 (s).[4] We must determine the meaning of the statutory language from other sources. The only discussions of the language recognize that its scope was somewhat uncertain and likely to be productive of litigation. See Dane, The New Sales and Use Tax Law, 51 Mass. L. Q. 239, 258–261; Metaxas, State and Local Taxation, 1966 Ann. Surv. Mass. Law, §§ 22.1–22.5, fn. 17, where the limitations of

[4] The Massachusetts sales and use tax was recommended by 1966 House Doc. No. 1, App. B. See § 6 (s), p. 10, and was enacted in the precise language there set forth. The bill appears to have been in this respect an adaptation of earlier sales and use tax bills (see 1959 House Bill No. 2600, § 6 [r], and 1965 House Doc. No. 3354, § 6 [s], p. 15). At least two efforts were made during the progress of the bill through the Legislature to remove the machinery exemption which appeared in 1965 House Bill No. 3354, § 6 (s), p. 15, and in 1966 House Doc. No. 1, App. B, § 6 (s). See 1966 Senate Journal, pp. 396–397, 402–403. None of the material sheds light on the interpretation of § 6 (s).

356 Mass. 8                                        11

Wakefield Ready-Mixed Concrete Co. Inc. v. State Tax Commission.

§ 6 (r) and § 6 (s) are referred to as "rather technical." See also Barrett & Bailey, Taxation (1969 supp.) § 1340.[5]

We have no doubt that the process carried on in the mixer trucks between one of Wakefield's batching plants and a jobsite is manufacturing. It is an essential part of mixing the concrete and keeping it in a fluid state. The manufacturing process continues until the concrete leaves the mobile mixer. See *Buckley* v. *Northeastern Paving Corp.* 161 Maine, 330, 332–334. See also *Passaic Transit Concrete Co.* v. *State Tax Commr.* 19 N. J. Misc. 369; *Commonwealth* v. *McCrady-Rodgers Co.* 316 Pa. 155, 158–160. Cf. *Markey* v. *Danville Warehouse & Lumber, Inc.* 119 Cal. App. 2d 1, 6 (zoning); *Wauwatosa* v. *Strudell*, 6 Wis. 2d 450, 454–455 (zoning).

We think also that each mixer truck constituted, considered either separately or in connection with the batching plant, an industrial plant. See *Plew* v. *James Horrabin & Co.* 176 Iowa, 584, 589–591. See also G. L. c. 149, § 1 (as amended through St. 1967, c. 296, § 1), definitions of "factory" and "manufacturing establishments"; *Casey* v. *Barber Asphalt Paving Co.* 202 Fed. 1, 4–6 (9th Cir.); *Continental Pub. Works Co.* v. *Stein*, 232 Fed. 559, 562 (2d Cir.); *Lilley* v. *Eberhardt*, 37 S. W. 2d 599, 600–601 (Mo.); *North Side Laundry Co.* v. *Allegheny County Bd. of Property Assessment*, 366 Pa. 636, 639, app. dismissed 342 U. S. 803. Cf. *Tri-State Asphalt Corp.* v. *Glander*, 152 Ohio St. 497, 502–505 (bucket cranes engaged merely in transportation); *W. E. Anderson & Sons Co.* v. *Glander*, 154 Ohio St. 561, 562 (where concrete mixer unit was purchased separately from truck chassis, the chassis was held subject to sales and use tax as essentially a transportation instrumentality). It is hard to see how the concrete could be mixed and kept fluid, if it were not for the essential operation in the mixer truck unit.

[5] The commission's Sales and Use Tax Regulation No. 18, C.C.H. Mass. Tax Service, par. 60–242a (not effective until December 1, 1968) is not a part of the record in these cases. It is referred to by us only as a commentary on the statutory language. It seems to us to be inconclusive and fully as consistent with Wakefield's contention as with that of the commission. See 13 Boston Bar J. No. 4, p. 27.

The purpose of § 6 (r) and § 6 (s), is to exclude entirely certain items from the impact of the sales and use tax on the basis of the nature of the items. See Dane, op. cit., 51 Mass. L. Q. 239, 259. We do not regard this type of statutory provision as the type of exemption concerning which a special burden rests upon a taxpayer, claiming the benefit of the provision, to bring himself within its scope. See *Boston Gas Co.* v. *Assessors of Boston*, 334 Mass. 549, 553–554; *Assessors of Holyoke* v. *State Tax Commn.* 355 Mass. 223, 233–234. The subsections are merely part of the statutory definition of the types of sales and uses of tangible personal property which are to be employed in measuring the excises and of those which are not so to be used. We perceive no legislative intention that there should be any such restrictive interpretation of subsecs. (r) and (s) as that for which the commission contends.

The mixer truck is a specially designed unit in which the container mounted on the truck frame is rotated by use of the truck's diesel power. The whole truck seems to us to constitute an industrial plant and also to be an integral part of the fixed manufacturing (batching) plant to which it is attached. There is no occasion for distinguishing, for purposes of § 6 (r) and § 6 (s), between the truck chassis and the mixer part of this unit. No part of the unit has been shown to have any use except for the specialized manufacturing purpose of mobile concrete mixing.

The decisions of the Appellate Tax Board in this case and the companion cases are reversed. See fn. 1. The cases are remanded to the board for abatement and refund of the disputed excises with interest. Wakefield is to have costs.

*So ordered.*