## Brattleboro Chalet Motor Lodge, Inc. v. Richard C. Thomas, Secretary of State

[279 A.2d 580]

No. 155-70

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed June 1, 1971

*Paterson, Gibson, Noble & Brownell,* Montpelier, for Plaintiff.

*James M. Jeffords,* Attorney General, and *George E. Rice,* Assistant Attorney General, for Defendant.

**Shangraw, J.** This is a bill in chancery brought by the plaintiff, a New Hampshire corporation, against the Secretary of State, as the state officer charged with the responsibility of enforcing billboard regulations under the statute. Plaintiff seeks to permanently enjoin the defendant from enforcing a removal order of an "on-premise sign" erected by the plaintiff on its property in the Town of Brattleboro, Vermont.

The case was heard by the chancellor on September 28, 1970 and findings of fact were made and filed. An order and decree followed wherein it was determined and adjudged that the sign in question was not in violation of the statutory law of the State of Vermont relating to the erection and maintenance of signs and more particularly as erected and maintained it was not in violation of 10 V.S.A. § 335(b).

It was further ordered that the defendant is permanently and strictly restrained and enjoined from ordering or causing the removal of said sign, or in any way interfering with its maintenance by the plaintiff, in its present form and location.

The defendant has appealed from certain findings and also from the order and decree. This appeal from the decree brings the whole case, including all questions litigated in the court below which affect the final decree, if they are briefed, to this court for review. *Century Indemnity Co.* v. *Souther Adams Mead,* 121 Vt. 434, 436, 159 A.2d 325 (1960).

The rectangular shaped sign, the subject matter of this controversy, has a 10 feet vertical measurement by a 30 feet horizontal measurement. It has two faces, on each of which appears the words in very large letters "CHALET MOTOR LODGE". The sign is erected on two 10-inch steel beams set in concrete and attached by a steel bolt to the framing of a wooden stairway at the west end of a motel building on plaintiff's property. This stairway gives access to the second floor of the motel. The sign extends above the roof line of the motel.

Plaintiff's land runs westerly from the west of Route, U.S. 5, to the east right-of-way line of Interstate 91, and is about 1000 feet north of the intersection of Vt. Route 9, U.S. Route 5, and an exit ramp of Interstate 91. Interstate Highway 91, and the access ramps leading to and from it, are limited access facilities.

The motel structure is rectangular in shape, about 230 feet long, and runs approximately east-west on plaintiff's lot. In passing plaintiff's premises, Interstate 91 and Route U.S. 5 run approximately parallel courses, nearly north by northeast and south by southwest.

Under the provisions of 10 V.S.A. § 333, owners or occupants of real property may erect and maintain thereon on-

premises signs advertising the sale or lease thereof of activities being conducted thereon. Such signs are subject to regulations set forth in this statute, of which we are not concerned in the present case. We do however have occasion to consider 10 V.S.A. § 335(b) which provides:

No on-premise sign may be erected if it is so located as to be readable primarily from a limited access facility.

Whether or not the sign in question is in violation of the above quoted section of the statute, as claimed by the defendant, leads us to findings made by the chancellor, 8 to 10 inclusive.

8) Travellers utilizing the two highways have views of the sign here in controversy as follows:

A. *Travelling south:*

(1) From the westerly (southbound) lane of Interstate 91, the sign comes into view and may be read, at least by a stopped traveller, at a point on Defendant's Ex. A marked "7". This point is about 915 feet from the sign itself. It remains visible for only about 50 feet southerly, then disappears from view, and again becomes visible and readable from a point about 200 feet north of the point on the highway opposite the sign. This point is also opposite the lane to the exit ramp. It continues readable for about 150 feet, when its angle would begin to obscure it. The sign is thus visible and readable to a traveller proceeding south on Interstate 91 for a total of about 200 feet, interrupted, the first 50 feet of which, at interstate speeds, would take only a fraction of a second.

(2) From U.S. Route 5, the sign is readable at a point (4 on Defendant's Ex. A) about 485 feet north of the motel entrance, and 625 feet from the sign itself. It remains readable for about 50 feet, then disappears, and becomes readable again 240 feet from the entrance. It remains continuously in view until the entrance is reached. It is thus readable, travelling south, for about 290 feet, interrupted, from a highway having a 40 m.p.h. speed limit,

contrasted with the 65 m.p.h. interstate highway speed limit.

B. *Travelling north:*

(1) From the easterly (northbound) lane of Interstate 91, the sign becomes visible about 1700 feet southerly from its location, with view of it being intermittent due to buildings and trees. It continues readable to a point about 200 feet south of the sign, when it becomes no longer readable. Almost all of this theoretically readable distance has, however, no practical utility to the plaintiff, because it occurs after the traveller has passed the off-ramp which he would have to use to reach the motel premises. The sign is also readable for a short distance, from the off-ramp from the northbound lane.

(2) From U.S. Route 5, the sign can first be seen and read from point 3 on Defendant's Ex. A, 730 feet from the motel entrance and 850 feet from the sign itself. It remains readable until the traveller reaches the motel entrance. Along this 730 foot stretch, it is at least as visible and readable as from any point on any highway.

9) Plaintiff's customers cannot be broken down into categories which tell the routes they utilize to reach the motel, but it is apparent they use all the major highways, including Interstate 91, Route U.S. 5, and Vermont Route 9.

10) The sign is so located on plaintiff's land that it is closer to the right-of-way line of Interstate 91 than it is to Route U.S. 5. It is, however, closer to the edge of Route U.S. 5 than it is to the east edge of the southbound lane of Interstate 91, the only lane which could, at a point opposite the sign, carry potential motel customers, since those in the northbound lane would have passed the exit ramp. The sign faces Route U.S. 5 slightly more directly than it does Interstate 91.

Continuing, in Finding No. 11 the chancellor reached the conclusion that the sign in controversy, as located, is not "readable primarily from a limited access facility" within the meaning and intent of 10 V.S.A. § 335(b).

Included in Finding No. 8 (B) (1) is a statement to the effect that the sign had "no practical utility to the plaintiff" with respect to northbound travelers on Interstate 91, because the sign was readable only after they had passed the off-ramp of the Interstate which they would have to use to reach the motel premises.

The appellant contends that, because of the inclusion of the above statement in Finding No. 8, that the Chancellor must necessarily have used it as his basis for ultimate Finding No. 11 that the sign was not "readable primarily from a limited access facility" within the meaning and intent of the statute. By this also, it is claimed that Finding No. 11 was made in connection with the chancellor's interpretation of section 335(b), *supra*, that a sign must have accessibility in order to be readable primarily from a limited access facility.

The defendant urges that the chancellor's consideration of accessibility was improper. The clear meaning of the findings is that the sign is more readable from U.S. Route 5 than from the Interstate. Taking the findings as a whole, it is apparent that the consideration of access to the motel premises had no controlling influence on the chancellor's conclusion contained in Finding No. 11. At most, it is a mere overage in the findings.

The appellant does not contend that any of the findings made by the chancellor with respect to visibility and readability of the sign or the accessibility of plaintiff's motel from the public highways are unsupported by the evidence. The chancellor made very specific findings with respect to locations on both the Interstate and U.S. Route 5 from which the sign could be seen and read by travelers on these highways.

Nor, has the appellant questioned Finding No. 8(B)(2) which reads in part as follows in its reference to the sign's appearance from U.S. Route 5, "along this 730 foot stretch, it is at least as visible and readable as from any point on any highway."

It seems quite clear that the word "readable", in 10 V.S.A. § 335(b), is an adjective which modifies the word "sign". It also follows that the word "primarily" is an adverb which modifies the adjective "readable". Websters New International Dictionary, 2d Edition, defines the word "readable" as that which is "legible" or "easy to read". Webster also includes as

a definition, that which "permits or admits reading". Webster also defines the word "primarily" as meaning "chiefly", "principally" or "mainly".

While no interpretation has been made by this Court with respect to the meaning of these words in the context in which we are now concerned, it is a generally accepted rule that words in a statute, without definition, are to be given their plain and commonly accepted use. *Eastern Advertising, Inc.* v. *Cooley*, 126 Vt. 221, 223, 227 A.2d 294 (1967). Where the meaning of the statute is plain and unambiguous there is no necessity for construction and the statute must be enforced according to its terms. *Leno* v. *Meunier*, 125 Vt. 30, 33, 209 A.2d 485 (1965).

Where a statute is ambiguous we must resort to the legislative intent for its construction. Among other things, rules of construction of such statutes call for a determination of the intent of the legislature by weighing the consequences of various constructions, beginning with the most literal, against the general objectives of the enactment. *Marshall* v. *Brattleboro*, 121 Vt. 417, 160 A.2d 762 (1960).

The legislative intent, as applied to an "on-premise sign" is to be found in 10 V.S.A. § 335 (b) hereinbefore quoted in this opinion. The legislature sought to restrict on-premise signs from being prominently displayed on the Interstate Highway System. At the same time, it was mindful that where the signs served travelers on other highways neighboring the interstate, the landowner had a right to attract such persons from these sources provided that such a sign was not primarily or principally beamed toward the Interstate.

The evidence indicates that the impact of the sign is directed to U.S. Route 5, rather than to the interstate. Finding No. 11, that the sign is not "readable primarily from a limited access facility" is amply supported by subordinate findings.

The parties agreed that the chancellor would make an observation of the area involved in this litigation. Counsel for the plaintiff stated: "I do not suggest that the view be taken as evidence." On the contrary, the defendant requested that it

be considered as evidence. The chancellor took the position that, in the absence of agreement by the parties, he could not consider what he saw as evidence. The findings of fact state that such view was taken by the chancellor for the sole purpose of gaining familiarity therewith. Under the circumstances, and with the foregoing limitation, the action of the chancellor was proper.

By way of an assignment of error, the defendant contends that while the chancellor did make findings, based on evidence taken during the hearing, he did not make use of the additional evidence available by reason of the view taken to familiarize himself with the area involved in the litigation.

There was introduced in evidence a plan, prepared by an engineer, of the area in question showing the plaintiff's property, the location of the motel and the sign, the location of the highways, and all other principal features suggested by either of the parties to be material. The plan was introduced through the witness, Boynton Sair, an engineer employed by the State as a highway technician on primary design. He scaled off the distance from points on the highways to the sign and gave evidence on the visibility and readability of the sign from those points.

Furthermore, defendant contends that the failure of the chancellor to consider the view as evidence resulted in findings contrary to what would have been made if such view had been considered as evidence. The weakness in the defendant's position is that he does not suggest in what way the findings might have been affected by the use of the view as evidence. Defendant cannot prevail on this point.

The decree of the chancellor must be affirmed, without reference to the doctrine of estoppel claimed by the plaintiff. In view of this, we find no occasion to review such claim.

From a careful review of the evidence and findings there appears no occasion for us to disturb the order and decree.

*Order and decree affirmed.*