## McClure Newspapers, Inc. v. Vermont Department of Taxes

[315 A.2d 452]

No. 47-73

Present: Shangraw, C.J., Barney, Smith, Keyser and Daley, JJ.

Opinion Filed February 5, 1974

*Lawrence A. Wright, Esq.*, of *Gravel & Shea*, Burlington, for Plaintiff.

*Kimberly B. Cheney*, Attorney General, and *Georgiana O. Miranda*, Assistant Attorney General, for Defendant.

**Daley, J.** This is an appeal by the Vermont Department of Taxes from an order of the Washington County Court overruling the Tax Commissioner's decision to assess a sales and use tax on items used in the production of a daily newspaper. The issue framed for consideration is whether or not the Washington County Court correctly ruled that the taxed items came within the statutory exemption.

McClure Newspapers, Inc., hereinafter referred to as McClure, is a Vermont corporation, with its principal place of business at Burlington, Vermont; it publishes a daily newspaper, *The Burlington Free Press*. The Vermont Department of Taxes, the appellant, sent an auditor to the McClure place of business for a tax audit. Thereafter a tax deficiency was claimed by the State, alleging therein that there was no sale and use tax paid on flashbulbs, photographic film and perforated tapes, items used in the production of the *Free Press*. The tax sought to be imposed is a compensating use tax, 32 V.S.A. § 9773.

McClure appealed to the Tax Commissioner, who subsequently held a hearing. The hearing before the Commissioner, the only time at which testimony was taken, was largely a theoretical discussion between representatives of the Department of Taxes and the newspaper as to whether or not the items at issue fell within the parameters of 32 V.S.A. § 9741 (14). McClure gave testimony as to how the newspaper production occurred at its place of business. At the conclusion of the hearing, the Commissioner found that the items were properly assessed the tax pursuant to Chapter 233 of Title 32 of the Vermont Statutes Annotated and upheld the original assessment.

McClure appealed to the Washington County Court. That court, in an opinion which reiterated the facts, coupled with its interpretation of the exemption statute, stated that the items in question were within the purview of the purpose of the enactment. Specifically, films, flashbulbs, and perforated tapes used by the appellant (McClure) are consumed or destroyed in the manufacturing process; and the manufacturing process commences in the business of producing the appellant's newspaper with the mechanics and art of newsgathering. An order was issued vacating the tax assessment.

The Vermont Department of Taxes appealed to this Court, claiming the lower court erred in determining that the tapes used in the transcription of the news stories are destroyed; the manufacturing process of the newspaper begins with the gathering of raw material; and lastly, the films and the flashbulbs used in the production of the newspaper are used in the manufacturing phase.

Relevant facts as to the production of the newspaper found by the Commissioner are as follows:

The news is gathered from various sources, one being the reporter, who also doubles as photographer; and another is the extraction of news from the wire service.

The reporter takes many pictures of one incident or event in hopes of obtaining one reprintable photograph. The very nature of the occurrence requires many attempts in order to capture that impressionable event which is later used to convey to the conscience of the public that which was perceived by the reporter. The photograph serves to freeze the event into a form which can, by other means, be reproduced in such a way as readers of the newspaper can judge for themselves, at a much later time, the event portrayed.

McClure purchases the film in bulk and makes its own individual rolls for the reporters to take into the field. The flashbulbs are expended in order to produce adequate light to aid in the exposure of the film, thereby consumed in their function. The film is processed, and when prints are made, the actual film is destroyed, leaving only negatives which are a resulting product of treating the film with various processing methods.

The photographs are trimmed, culled, and cut to fit the correct column width for the next phase of production. Only about ten (10) per cent of the total pictures that are received are actually used.

The perforated tapes are purchased by McClure and used to extract news from the wire service initially; and then they are run directly into a photon unit. The emerging matter is the perforated tapes in a photographic state.

This composition, together with other material and the cut photographs, is laid out and a photographic negative is taken. This negative is converted by a process into an aluminum offset plate. The plate is put into a press in such a way that when paper is mechanically passed over it, a printed page of the newspaper results. All these steps along the way are expendable.

It is agreed that the items in question are tangible personal property within the meaning of Chapter 233 of Title 32. In addition, it is undisputed that in order for the items to be

exempt, they must come within the statutory exemption found in 32 V.S.A. § 9741(14):

Receipts from the following shall be exempt from . . . the use tax imposed under section 9773 of this title.

(14) Tangible personal property which becomes an ingredient or component part of, or is consumed or destroyed or loses its identity in the manufacture of tangible personal property for later sale but does not include fuel and electricity.

The appellant points to testimony from the transcript to support its first claim of error that the tapes were not destroyed in the process but could be reused. It suggests the test should be whether the tapes *could* be used again, not whether they *would* be used.

■ We do not need to pass on the soundness of the test here, for upon a careful reading of the testimony, we find that there is no evidence to support the appellant's contention of reusability. The discussion on reusability refers to another newspaper's process, and it is not a party to this appeal. Further reading of the testimony reveals that a representative of the Department of Taxes concedes that there is no issue taken with the McClure perforated tapes because these activate the press which therefore would easily come within the narrow interpretation that the Department of Taxes wants this Court to take in construing the word "manufacture". The Tax Commissioner was in error in assessing the tax on the perforated tapes.

The appellant agrees that the production of a newspaper is a manufacturing process, but disagrees as to when it begins. It wants this Court to take a very narrow view which would have the commencement begin with the mechanical activation of the press. This would exclude the films and flashbulbs as a step prior to manufacturing.

No argument of any merit with respect to these two items has been advanced which would place them without the exemption if their utilization occurs during the manufacturing process. Thus, the precise issue becomes whether the photographing of news events should be considered part of the manufacturing process or merely the procuring of raw

materials prior to commencement of the manufacturing process.

The case law from other jurisdictions is not helpful. Each case has been decided upon the construction of the particular manufacturer's exemption statute, often worded differently from ours, and with regard to a particular type of personal property claimed to be exempt. Often one of the parties is a printer rather than a newspaper publisher. See *Donnelley* v. *Porterfield*, 30 Ohio State 2d 219, 284 N.E.2d 171 (1972); *Courier Citizen Co.* v. *Commissioner of Corporations & Taxation*, 358 Mass. 563, 266 N.E.2d 284 (1971). In Vermont, 32 V.S.A. §§ 9771(3) and 9773(3) would undoubtedly be considered at the outset were the appellee a job printer rather than a newspaper publisher.

The word "manufacture" is not defined in the statutes, and Vermont case law is silent on this point. The appellant argues that the word should be narrowly interpreted; that with respect to a newspaper, manufacture begins at about the time the presses begin to roll. Yet its own regulations convey a contrary impression. Tax Dept. Reg. 226-5 IVa instructs: "Manufacture will be interpreted broadly to include in general the processing or fabrication of raw, unfinished or semi-finished materials into the form in which they will be marketed."

We agree with the court below that the raw materials manufactured into the finished product, the newspaper, are the newsworthy events occurring in society. A fire or a demonstration is an event or occurrence which then is processed by the newspaper, and the event becomes widely known to the public via the newspaper, the end result of the manufacturing process. A newspaper is certainly distinguishable from the ordinary industrial corporation. News events are not manufactured in the sense of being instigated or procured; they exist or occur, and the initial action taken by the photographer is as much a part of producing the news as is applying print to paper. Thus, once the practicalities of newspaper publishing are recognized, resolution of the issue before us is difficult only if we allow words, narrowly defined, to prevail over common sense.

■■ The appellant relies on *Stowe Preparatory School, Inc.* v. *Town of Stowe*, 124 Vt. 392, 205 A.2d 544 (1964),

where this Court stated at page 396: "Statutes of exemption are to be strictly construed, and no claim of exemption can be sustained unless within the express letter or necessary scope of the exempting clause." However, once it is conceded that the 32 V.S.A. § 9741(14) exemption is available at all for the newspaper publishing business, and the appellant has so conceded, it is necessary to determine what the manufacturing process encompasses in this somewhat unique industry. Since the film and the flashbulbs are expended in the manufacturing process, a claim that they are exempt fits within the "necessary scope of the exempting clause." Because news events are the raw materials, it is impractical to limit the manufacturing process to the running of the presses or to a point shortly before that time. "[W]hile a statute providing for exemption from taxation is to be strictly construed, the construction must be reasonable and not such as would defeat the purposes of the statute." *Medical Center Hospital of Vermont, Inc.* v. *City of Burlington*, 131 Vt. 196, 199, 303 A.2d 468 (1973).

We have no difficulty in finding that McClure's claim of exemption is sustainable under the strict construction test of *Stowe*. Furthermore, we are not at all certain that this strict construction test is applicable here. The overall purpose of 32 V.S.A. § 9741 may be primarily definitional. A similar Massachusetts statute excluding enumerated items from the imposition of sales and use taxes was so characterized in *Wakefield Ready-Mixed Concrete Co.* v. *State Tax Commission*, 356 Mass. 8, 247 N.E.2d 869, 871–72 (1969):

> We do not regard this type of statutory provision as the type of exemption concerning which a special burden rests upon a taxpayer, claiming the benefit of the provision, to bring himself within its scope. [Citations omitted.] The subsections are merely part of the statutory definition of the types of sales and uses of tangible personal property which are to be employed in measuring the excises and of those which are not so to be used.

Even if the strict construction test is applicable, the Commissioner cannot rely on a presumption of taxability under 32 V.S.A. § 9813. A careful reading of this section reveals that such a presumption is only available to the tax department when it seeks to assess a sales tax under 32 V.S.A.

§ 9771. Section 9813 does not refer to 32 V.S.A. § 9773, the section which allows imposition of the compensating use tax.

This Court cannot perceive a legislative intention that there should be any such restrictive interpretation of 32 V.S.A. § 9741(14) as that for which the Department of Taxes here contends. Any tax imposed on expendable materials employed prior to the actual rolling of the presses would result in a cost to the publisher that would be passed on to the consumer. Receipts from the sale of the newspaper, the final product, are exempt under 32 V.S.A. § 9741(15). The presence of this subsequent subsection does not conclusively show that the Legislature intended that no costs of taxation should be imposed on the newspaper business and passed along to the public, but we do feel it manifests some legislative intent that would be defeated if 32 V.S.A. § 9741(14) were to be narrowly construed in this instance.

In affirming the judgment of the lower court, we are not adopting a "but for" test that will allow industry in general to exempt itself from the State's use tax statutes. We say not that photographs are the raw materials and that film and flashbulbs are exempt solely because they are essential to beget a photograph, but rather that the events themselves are the raw materials and the film and flashbulbs are expendables which effect a conveyance of the impression during one step of the manufacturing process.

Applying the rule of reasonable, practical construction solely to the items in issue before us upon the evidence presented to the Commissioner, we hold that the county court properly found that the items fell within the meaning of the statute and were exempt from the claimed tax.

*Judgment affirmed.*