## Hadwen, Inc. v. Department of Taxes

[422 A.2d 255]

No. 172-79

Present: Barney, C.J., Daley, Larrow, Billings and Hill, JJ.

Opinion Filed September 9, 1980

*Clark, Lillie & Holden,* Bennington, for Plaintiff.

*John S. Burgess,* Brattleboro, for amici curiae Town Crier, Inc., Shaw Press, Inc., and Winmill Publishing Corp.

*M. Jerome Diamond,* Attorney General, and *Edwin L. Hobson, Jr.,* Assistant Attorney General, Montpelier, for Defendant.

Billings, J. This case arises from an order of the Bennington Superior Court reversing on appeal a determination by the commissioner of taxes that the plaintiff, Hadwen, Inc., owes use taxes, 32 V.S.A. § 9773, from August, 1972, through December, 1974, on the ink, newsprint and other supplies used by the plaintiff in the publication of the "Pennysaver." The Department of Taxes, appellant here, has sought collection of the tax on the premise that the ingredients of the "Pennysaver" are not exempt from tax under 32 V.S.A. § 9741(14) because the "Pennysaver" is not sold. The plaintiff, Hadwen, Inc., has contended that it is exempt from taxation under 32 V.S.A. § 9741(14) and (15), and either by operation of the equal protection clause of the Fourteenth Amendment

or under the First Amendment of the United States Constitution.

The facts are not in issue here, but the classification of the "Pennysaver" as a newspaper is relevant to this Court's review of the plaintiff's arguments, since plaintiff's equal protection argument applies only if the "Pennysaver" is found to be a newspaper, while the First Amendment issue hinges upon a determination that the publication is not a newspaper.

It is apparent from the record that the "Pennysaver" is a weekly publication with a circulation of roughly 34,000. The vast majority of its space is devoted to advertisements, but 2–3% of each issue contains current events news and opinion commentary. It is not sold to its readers. The commissioner determined that the "Pennysaver" is not a newspaper under the standards used in *Green* v. *Home News Publishing Co.,* 90 So. 2d 295, 296 (Fla. 1956). This ruling was rejected by the superior court below.

 Inasmuch as *Green* involved review of administrative rules and regulations promulgated under Florida's sales tax law, we are not compelled to follow it. See *McClure Newspapers, Inc.* v. *Department of Taxes,* 132 Vt. 169, 173, 315 A.2d 452, 454 (1974). Where our statutes do not provide a definition of a word, we look to the plain and commonly accepted use of it. *Brattleboro Chalet Motor Lodge, Inc.* v. *Thomas,* 129 Vt. 405, 411, 279 A.2d 580, 583 (1971). Furthermore, in construing a statutory word or provision, this Court will avoid a construction which may lead to the unconstitutionality of the provision in question if a reasonable alternative construction exists. Cf. *Audette* v. *Greer,* 134 Vt. 300, 302, 360 A.2d 66, 68 (1976) (construction leading to irrational consequence or rendering legislation ineffective avoided). Therefore, we decline to adopt a definition of "newspaper" publications based upon their content, see *Erznoznik* v. *City of Jacksonville,* 422 U.S. 205, 215 (1975); *Police Department* v. *Mosely,* 408 U.S. 92, 95 (1972), as the appellant urges through its endorsement of the commissioner's use of *Green.*

██ Webster's New International Dictionary (2d ed. unabridged 1955) states that a newspaper is "[a] paper printed and distributed, at stated intervals, usually daily or weekly,

to convey news, advocate opinions, etc., now usually containing also advertisements and other matters of public interest." The "Pennysaver" is printed material distributed at a stated interval that contains matters of public interest. While it may be possible for a newspaper to appear at irregular intervals defined by specific events of interest to readers, we need not reach that issue here, since the "Pennysaver" appears regularly each week. As such, it is clearly not a mere handbill or broadside distributed without any periodicity. Moreover, the publication clearly raises or relies upon the interest of a significant segment of the public, unlike the usual correspondence of a few individuals. Since this printed material is both periodic and of public interest, this Court is unwilling to hold that the "Pennysaver" is not a newspaper within the commonly accepted use of that term.[1] The fact that it is not "sold" in the commonly accepted meaning of the term "sale" does not change this result. *L. H. Henry & Sons* v. *Rhinesmith,* 219 Iowa 1088, 1090–92, 260 N.W. 9, 10–11 (1935).

Since the superior court was correct in classifying the "Pennysaver" as a newspaper, we turn to the plaintiff's contention that the provisions of 32 V.S.A. § 9741(14) and (15)[2]

---

[1] By 1979, No. 105 (Adj. Sess.), § 40, a definition of "newspaper" requiring at least 10% average content other than advertising was added to 32 V.S.A. § 9741(15). Similarly, the distinction between sale and free distribution was removed, as regards incorporated ingredients. Thus the "Pennysaver" would now qualify for its claimed exemption if, but only if, the content of its printed material met the statutory definition.

[2] Subsection (14) was originally worded as follows:
Receipts from the following shall be exempt from . . . the use tax imposed under section 9773 of this title.

. . . .

(14) Tangible personal property which becomes an ingredient or component part of, or is consumed or destroyed or loses its identity in the manufacture of tangible personal property for later sale but does not include fuel and electricity.
Effective July 1, 1974, 1973, No. 270 (Adj. Sess.), § 3, amended this subsection to read as follows:

(14) Tangible personal property which becomes an ingredient or component part of, or is consumed or destroyed or loses its identity in the manufacture of tangible personal property for sale but does not include fuel and electricity; machinery and equipment for use or consumption directly and exclusively in the manufacture of tangible

when read together indicate a legislative intent to wholly exempt the newspaper publication process from the sales and use tax.

In construing a statute, the plain, ordinary meaning of language is presumed to be intended. *In re Middlebury College Sales & Use Tax,* 137 Vt. 28, 31, 400 A.2d 965, 967 (1979); *Standard Register Co. v. Commissioner of Taxes,* 135 Vt. 271, 273, 376 A.2d 41, 43 (1977). The term "sale" is defined in 32 V.S.A. § 9701(6) to include "any transfer of title or possession or both . . . for a consideration." See *Standard Register Co., supra,* 135 Vt. at 273, 376 A.2d at 42–43. There can be little doubt that the plain meaning of the language of subsection (14), which refers to the "sale" of products manufactured, is to condition the availability of the exemption, on the ultimate sale of the product made from goods the transfers of which are to be exempted. Cf. *Id.* ("Resale" as used in 32 V.S.A. § 9741(16) defined).

■ There is nothing in the language of subsection (14) to overcome the presumption that its language was used advisedly. *State v. Lynch,* 137 Vt. 607, 611, 409 A.2d 1001, 1004 (1979); *State v. Racine,* 133 Vt. 111, 114, 329 A.2d 651, 654 (1974). Therefore, since the meaning of the subsection is plain, in the context of this case there is no necessity for construction of it with respect to subsection (15), and the trial court was required to follow the statute according to its terms, see *State v. Lynch, supra; Swanton Village v. Town of Highgate,* 131 Vt. 318, 325, 305 A.2d 586, 589 (1973).

This rule is not altered by our opinion in *McClure Newspapers, Inc. v. Department of Taxes, supra,* inasmuch as that case dealt with the construction of a word not statutorily defined. While acknowledging that in *McClure* this Court indicated that subsection (15) "manifests some legislative intent that would be defeated if 32 V.S.A. § 9741(14) were to be narrowly construed," Mr. Justice Daley, speaking for the

---

personal property for sale. For the purposes of this subsection, "manufacture" includes extraction of mineral deposits, the entire printing and book-making process, and the entire publication process.

Subsection (15) was originally worded and remained, until 1980: "Sales of newspapers." See Footnote 1, *supra.*

Court, made it clear that the presence of subsection (15) does not conclusively show the legislative intent "that no costs of taxation should be imposed on the newspaper business and passed along to the public." *Id.* at 175, 315 A.2d at 455. Goods used in the publication of this newspaper, which is not shown to be sold except in isolated instances, are not exempt from the use tax by reason of subsections (14) and (15).[3]

 The plaintiff contends and prevailed in the superior court below with the proposition that the tax imposed upon it is unconstitutional under the equal protection clause of the Fourteenth Amendment of the United States Constitution. In determining whether economic regulation is violative of the equal protection clause, this Court is required to impose only the minimum scrutiny of the so-called "rational basis test." This test, variously articulated in our cases, permits a determination of unconstitutionality only where the relevant law classifies similar persons for different treatment upon wholly arbitrary and capricious grounds. *Pabst* v. *Commissioner of Taxes,* 136 Vt. 126, 133, 388 A.2d 1181, 1185 (1978); *Andrews* v. *Lathrop,* 132 Vt. 256, 259, 315 A.2d 860, 862 (1974); *Vermont Motor Inns, Inc.* v. *Town of Hartford,* 134 Vt. 52, 55, 350 A.2d 369, 371 (1975); *In re Barcomb,* 132 Vt. 225, 232, 315 A.2d 476, 481 (1974). Where the classification rests upon "some reasonable consideration of legislative policy," it will not be found unconstitutional. *Andrews* v. *Lathrop, supra.*

 While the plaintiff urges this Court to consider the classification here as distinguishing newspapers which are sold and those which are not sold, we find such a characterization of the statute to be unnecessarily particular. Cf. *Maxwell* v. *Bugbee,* 250 U.S. 525, 543 (1919) (classes must not be overly particular in equal protection analysis of estate tax).

"Retail sales within the state are the general subject of the sales tax, unless specifically exempted. And sales from outside the state, at retail, to persons within the state . . . are the subject of the compensating use tax, unless specifically exempted." *Standard Register Co.* v. *Commissioner of Taxes, supra,* 135 Vt. at 273, 376 A.2d at 43. The provisions of 32 V.S.A. § 9741

---

[3] See Footnote 1, *supra,* for changes in present statute.

are "part of the statutory definition of the types of sales and uses of tangible personal property which are to be employed in measuring the excises and of those which are not so to be used." *McClure Newspapers, Inc.* v. *Department of Taxes, supra,* 132 Vt. at 174, 315 A.2d at 455 (quoting from *Wakefield Ready-Mixed Concrete Co.* v. *State Tax Commission,* 356 Mass. 8, 12, 247 N.E.2d 869, 871–72 (1969)). Subsection (14), the so-called "manufacturer's exemption," is intended to fix the point of excise on the last retail transaction in the production process by exempting prior transactions. See *McClure Newspapers, Inc.* v. *Department of Taxes, supra,* 132 Vt. at 174–75, 315 A.2d at 455. This provision prevents multiple taxation during the manufacture and production of goods for their ultimate use. The sale to the ultimate user is used as the measuring point for the imposition of the tax, see 32 V.S.A. §§ 9771(1), 9773(1), and for the definition of exemptions designed to focus the point of excise on retail sales, see *Standard Register Co.* v. *Commissioner of Taxes, supra,* 135 Vt. at 273, 376 A.2d at 43 (construing 32 V.S.A. § 9741(16)). The use of the words "for sale" and "for later sale" in subsection (14) is clearly rationally related to the purpose of the sales and use tax in focusing the point of excise on retail sales and limiting multiple taxation.

Although it might be argued that the plaintiff sells its products at retail to advertisers, the parties have agreed that the plaintiff does not sell its product. Because of this, the sale to the plaintiff of the ink, newsprint and other goods, the tax on which is in contention here, is an ultimate retail sale. Although this means that the same supplies are not taxed to newspapers which sell copies to their readers, through the operation of subsections (14) and (15), this result is consistent with the rational organization of the sales and use tax scheme. Moreover, the rationality of the result is not vitiated by the fact that sales of newspapers are exempt under subsection (15) which is based on the policy of *de minimis non curat lex.* In keeping with its policy of exempting small sales (*i.e.,* under 14¢, 32 V.S.A. § 9772), the Legislature could well have considered the large percentage of retail newspaper sales made not only for small sums, but by minors, acting as "independent merchants." The retail sale is the key to the imposition of the tax.

*The judgment of the Bennington Superior Court is vacated. The September 20, 1976, assessment of the Commissioner of Taxes is reinstated. To be certified to the Bennington Superior Court and to the Commissioner of Taxes.*