# Leonard G. Leverson v. William H. Conway, Commissioner, Vermont Department of Motor Vehicles

[481 A.2d 1029]

No. 83-157

Present: Billings, C.J., Hill, Underwood, Peck and Gibson, JJ.

Opinion Filed June 15, 1984

*Leonard G. Leverson,* pro se, Pittsford, Plaintiff-Appellant.

*John J. Easton, Jr.,* Attorney General, and *Andrew M. Eschen,* Assistant Attorney General, Montpelier, for Defendant-Appellee.

Gibson, J. On May 29, 1982, while residing in Wisconsin, plaintiff purchased a 1979 Subaru station wagon for the sum of $4325. He paid a five percent sales tax of $216.25 to the state of Wisconsin. In July 1982 plaintiff moved to Vermont. Upon registering his vehicle in Vermont in August 1982, plaintiff was required to pay a use tax of $112 as a condition of registration. The use tax, computed at the rate of four percent on a low book value of $2800 as of the date of registration, was paid by plaintiff under protest. Subsequently, plaintiff brought suit to recover the $112. The matter was submitted to the small claims court on an agreed statement of facts. Upon the entry of judgment for defendant, plaintiff appealed, presenting the following issues for our consideration.

(1) Whether the Vermont motor vehicle purchase and use tax (32 V.S.A. § 8901 et seq.) violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution by its failure to afford to a new resident credit for the sales tax paid on an automobile purchased, used, and registered in a former state of residence;

(2) Whether the Vermont motor vehicle purchase and use tax violates the Proportional Contribution Clause (Ch. I, Art. 9) of the Vermont Constitution by its failure to afford to a new resident credit for the sales tax paid on an automobile purchased, used, and registered in a former state of residence;

(3) Whether the Vermont motor vehicle purchase and use tax violates the Privileges and Immunities Clause of Article IV, § 2, cl. 1 of the United States Constitution by its failure to afford to a new resident credit for the sales tax paid on an automobile purchased, used, and registered in a former state of residence; and

(4) Whether the Vermont motor vehicle purchase and use tax violates the Commerce Clause (Art. I, § 8, cl. 3) of the United States Constitution by its failure to afford

to a new resident credit for the sales tax paid on an automobile purchased, used, and registered in a former state of residence.

32 V.S.A. § 8903 imposes a tax of four percent, or $600, whichever is smaller, upon the purchase and use of motor vehicles within the state of Vermont. The tax is payable by residents of the state at the time of purchase, § 8903(a), or, if the vehicle is purchased out of state, at the time the vehicle is first registered for use within the state. § 8903(b).

Residents who purchase pleasure cars outside the state and pay a sales or use tax to another state are exempt from paying a use tax to the state of Vermont, at least to the extent of the tax paid the other state, providing the state of purchase has a reciprocal agreement with Vermont that grants a similar credit for Vermont tax paid under similar circumstances. § 8911(9).

Until recently, a nonresident who purchased, registered and used his pleasure car in another state for at least thirty days was also granted an exemption; however, that exemption was repealed effective September 1, 1980. 1979, No. 202 (Adj. Sess.), § 3, Pt. VI, eff. Sept. 1, 1980 (repealing 32 V.S.A. § 8911(6)). As a result of the repeal, a nonresident who moves to Vermont and desires to register his motor vehicle here must pay the state of Vermont a use tax of four percent of the fair market value of his vehicle as of the time of registration. Although Wisconsin is a state that has a reciprocal agreement with the state of Vermont, the plaintiff, as a person who purchased his vehicle while a resident of Wisconsin and registered and used it in that state for more than thirty days, is not entitled to an exemption in light of the 1980 repeal.

The purpose of the motor vehicle purchase and use tax is to pay for improvement and maintenance of the state and interstate highway systems. 32 V.S.A. § 8901. The use tax, an important complement to the sales tax, is designed "to protect a state's revenues by taking away the advantages to residents of travelling out of state to make untaxed purchases, and to protect local merchants from out-of-state competition which, because of its lower or nonexistent tax burdens, can offer lower prices." *Rowe-Genereux, Inc.* v. *Depart-*

*ment of Taxes,* 138 Vt. 130, 133–34, 411 A.2d 1345, 1347 (1980). The power of a state to establish a nondiscriminatory tax on the user of goods brought from another state has long been firmly established. *Henneford v. Silas Mason Co.,* 300 U.S. 577 (1937).

■ Sales and use taxes are different in concept, and they are assessed upon different transactions.

> A sales tax is a tax on the freedom of purchase . . . . A use tax is a tax on the enjoyment of that which was purchased. . . .
> . . . Though sales and use taxes may secure the same revenues and serve the same complementary purposes, they are . . . taxes on different transactions and for different opportunities afforded by a State.

*McLeod v. J. E. Dilworth Co.,* 322 U.S. 327, 330–31 (1944). Because the taxes are intended to complement one another, a person who has paid a tax upon the purchase of a motor vehicle in Vermont is not subject to the payment of a use tax to the state. 32 V.S.A. § 8903(b).

## I.

■ We first consider whether Vermont's motor vehicle purchase and use tax violates the Equal Protection Clause. Plaintiff claims that the use tax adversely affects his right to travel and that any infringement of this fundamental right must be viewed with "strict scrutiny" by the courts. The right to travel has been recognized by the United States Supreme Court as a right that "protects new residents of a state from being disadvantaged because of their recent migration or from otherwise being treated differently from longer term residents." *Zobel v. Williams,* 457 U.S. 55, 60 n.6 (1982) (citing *Memorial Hospital v. Maricopa County,* 415 U.S. 250 (1974)); see also *Memorial Hospital v. Maricopa County, supra* (one-year county residency requirement for nonemergency medical benefits struck down as penalizing exercise of right to travel without the showing of a sufficient state interest in justification); *Dunn v. Blumstein,* 405 U.S. 330 (1972) (one-year residency requirement to vote in state election rejected on ground that no compelling state interest was

shown to justify the penalty imposed as a result of the exercise of the right to travel); *Shapiro* v. *Thompson,* 394 U.S. 618 (1969) (one-year residency requirement to qualify for welfare benefits struck down on ground that no compelling governmental interest had been shown in justification of the state action penalizing the exercise of the right to travel).

The "strict scrutiny" test is invoked upon a showing of some penalty resulting from the exercise of a fundamental right, such as the right to travel; there is no requirement of a showing that a person was deterred from traveling, only that there was a penalty for doing so. *Dunn* v. *Blumstein, supra,* 405 U.S. at 340. Under the strict scrutiny test, "any classification which serves to penalize the exercise of [a fundamental] right, unless shown to be necessary to promote a *compelling* governmental interest, is unconstitutional." *Shapiro* v. *Thompson, supra,* 394 U.S. at 634 (emphasis in original).

Ordinarily, when this Court is called upon to determine whether a tax law violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, the Court is required to impose "only the minimum scrutiny of the so-called 'rational basis test.'" *Hadwen, Inc.* v. *Department of Taxes,* 139 Vt. 37, 42, 422 A.2d 255, 258 (1980); see *Allied Stores of Ohio, Inc.* v. *Bowers,* 358 U.S. 522, 527 (1959). "This test . . . permits a determination of unconstitutionality only where the relevant law classifies similar persons for different treatment upon wholly arbitrary and capricious grounds. . . . Where the classification rests upon 'some reasonable consideration of legislative policy,' it will not be found unconstitutional." *Hadwen, Inc.* v. *Department of Taxes, supra,* 139 Vt. at 42, 422 A.2d at 258–59 (citing *Andrews* v. *Lathrop,* 132 Vt. 256, 259, 315 A.2d 860, 862 (1974)); *Allied Stores of Ohio, Inc.* v. *Bowers, supra,* 358 U.S. at 527.

Plaintiff complains that the court below erroneously used the "rational basis" test, applying an insufficient standard to his complaint, and that had the "strict scrutiny" test been applied, the use tax, which plaintiff paid under protest, would have been declared an unconstitutional infringement of plain-

tiff's right to travel under the Equal Protection Clause, entitling plaintiff to recover the $112 he paid to the state.

Plaintiff misconceives the nature of the right he seeks to invoke. His right to travel has not been infringed. He suffered no restrictions on his right to travel to Vermont and incurred no penalty as a result of the exercise of this right. He was free to bring his property, including his station wagon, to Vermont without incurring any penalty as a result. He was free to move about the state in public or private conveyance (other than the station wagon) without restriction or penalty, and he was free to obtain a Vermont driver's license without having to pay any use tax on his vehicle. Only when plaintiff sought the privilege of operating that vehicle on Vermont's highways was he required to register it; registration, not the move to Vermont, triggered the use tax obligation. Had plaintiff not sought to register the vehicle, he would have been under no obligation to pay a use tax on it.

In *Wells* v. *Malloy*, 402 F. Supp. 856 (D. Vt. 1975), *affirmed without opinion*, 538 F.2d 317 (2d Cir. 1976), the plaintiffs challenged the constitutionality of the statute providing for suspension of their right to drive following nonpayment of the automobile purchase and use tax. Rejecting plaintiffs' claim, the court held, "[a]lthough a driver's license is an important property right in this age of the automobile, it does not follow that the right to drive is fundamental in the constitutional sense." *Id.* at 858; accord *Montgomery* v. *North Carolina Department of Motor Vehicles*, 455 F. Supp. 338, 342 (W.D.N.C. 1978) (revocation of driver's license for refusal to submit to chemical tests does not deprive licensee of any fundamental constitutional right).

As was stated in *Wells* v. *Malloy, supra*, 402 F. Supp. at 859:

'Vermont may no longer be thought of as having only dirt roads and an inadequate transportation and highway system.' (quoting *Miller* v. *Malloy*, 343 F. Supp. 46, 50 (D. Vt. 1972)). It is certainly possible to get from place to place using public transportation or by taking advantage of the good nature of friends or family members.

In analyzing the argument that suspension of the right to drive is "beyond the pale of fair and just collection tech-

niques" and that the state should be limited to refusing to register a motor vehicle when the purchase and use tax is not paid, the court stated:

> The issue is really whether it is easier to find someone to drive one's own car if one cannot drive, or to obtain a registered automobile for one's own use if one can drive but has no other car. Seen in this light, we cannot conclude that suspension of driving privileges is any more harsh or coercive than refusal to register a motor vehicle . . . .

*Id.* at 862. We agree and conclude that the plaintiff's right to register his motor vehicle does not rise to the level of a fundamental constitutional right, nor does it implicate the fundamental right to travel. Since no fundamental right is involved, the applicable standard for measuring the constitutionality of Vermont's statute is the "rational basis" test.

As stated earlier, under the "rational basis" test we may find a statute unconstitutional "only where the relevant law classifies similar persons for different treatment upon wholly arbitrary and capricious grounds." *Hadwen, Inc.* v. *Department of Taxes, supra,* 139 Vt. at 42, 422 A.2d at 258. Any classification of taxation is permissible which "rationally furthers a legitimate state purpose." *Zobel* v. *Williams, supra,* 457 U.S. at 60; see *Hadwen, Inc.* v. *Department of Taxes, supra,* 139 Vt. at 42, 422 A.2d at 259. Since the purpose of the purchase and use tax is to pay for the maintenance and improvement of the state and interstate highway systems, 32 V.S.A. § 8901, the tax bears an obviously reasonable relationship to the services provided, namely, the privilege of using those highways.

The Legislature has chosen to grant certain exemptions from the purchase and use tax, see 32 V.S.A. § 8911(1)–(13); all nonexempt persons must pay the four percent tax. Among the legislative exemptions—and the only one pertinent hereto—is one for residents who pay a sales or use tax elsewhere on pleasure cars acquired outside Vermont, providing the state or province collecting the tax "would grant the same pro-rata credit for Vermont tax paid under similar circumstances." § 8911(9).

We note that the Vermont motor vehicle purchase and use tax does not apply to most nonresidents. Those nonresidents who come into the state to purchase a vehicle and then leave immediately to return to their home states do not have to pay a purchase or use tax to Vermont. See § 8903(a) (purchase tax is payable "by a resident"). Those who must pay either a purchase tax or the compensating use tax include residents who purchase in Vermont, § 8903(a); residents who register cars purchased outside Vermont in a state or province that would grant no pro-rata credit for any Vermont purchase or use tax paid by one of its residents, § 8903(b); persons such as plaintiff who move into Vermont and then register cars acquired before they became residents of the state, see § 8903(a), (b); persons who accept employment or engage in a trade, profession or occupation in Vermont for a period of at least six months and purchase a car here or operate one for more than 30 days, §§ 8902(2), 8903(a), (b), 23 V.S.A. §§ 4(30), 301; and any foreign partnership, firm, association or corporation doing business in the state and using vehicles in the state in connection with its business, 32 V.S.A. §§ 8902(2), 8903(a), (b), 23 V.S.A. §§ 4(30), 301.

Thus, Vermont's basic policy is clear: those who use the state's highways must contribute toward their maintenance and improvement. It is also the state's policy to encourage residents to support the local economy by refusing to grant credit for taxes paid to any nonreciprocating state or province. The only exemption under the state's policies is for residents who buy in reciprocal states and cannot avoid paying a sales or use tax to such states. The exemption appears to be based upon a policy of encouraging out-of-staters from reciprocal states to purchase their vehicles in Vermont and pay a sales tax to Vermont, secure in the knowledge that they will not be subject to a duplicate tax in their home states, and upon a legislative assumption that few, if any, tax dollars will be lost through this exercise in comity. Whether the amount of highway tax raised in Vermont in this manner exceeds or falls below the amount lost to other states through the reciprocal arrangement does not appear of record; nevertheless, the exempt classification is based on a reasonable legislative policy or purpose, and, unless wholly arbitrary, must be upheld. *Allied Stores of Ohio, Inc.* v. *Bowers, supra*, 358 U.S. at 527;

*Hadwen, Inc.* v. *Department of Taxes, supra,* 139 Vt. at 42, 422 A.2d at 259.

As mentioned, the exemption is not available to residents who acquire cars in states having no reciprocal agreement with Vermont; nor is the exemption available to new residents, such as plaintiff, who, subsequent to acquiring their vehicles, move to Vermont and seek to register them here. A change in the law so as to provide an exemption to either group would run counter to the state's present policies of requiring user contributions and encouraging purchases within the state, and would result in the loss of tax revenues to the state. With respect to new residents, such as plaintiff, who bring their cars with them, they are beyond the reach of any policy of encouragement to purchase in this state, and there is no reason to exempt them from making a fair contribution to the maintenance and improvement of Vermont's highways. Under the present statutory scheme, plaintiff pays the same tax and is treated in exactly the same manner as all nonexempt persons, including the resident who purchases his vehicle in a nonreciprocal state.

It is also necessary to keep in mind that § 8911(9) is an exemption from the payment of taxes, and exemptions are construed strictly, with no claim of exemption to be allowed unless shown to be within the necessary scope of the statute. *Rock of Ages Corp.* v. *Commissioner of Taxes,* 134 Vt. 356, 359, 360 A.2d 63, 65 (1975). "A state, for many purposes, is to be reckoned as a self-contained unit, which may frame its own system of burdens and exemptions without heeding systems elsewhere." *Henneford* v. *Silas Mason Co., supra,* 300 U.S. at 587. The fact that plaintiff does not qualify as a member of the exempt class does not deprive him of the equal protection of the law. *Storaasli* v. *Minnesota,* 283 U.S. 57, 62 (1931). "[T]he exemption is a proper and lawful one, and [plaintiff] cannot make out a discrimination against him from the mere fact that he is not in a position to claim it." *Id.*

We conclude that the exempt classification established by the Legislature is rationally related to a legitimate purpose of state government, namely, the promotion of commerce within the state and the raising of taxes to help main-

tain and improve the state and interstate highway system, and that the classification is not an arbitrary one. Accordingly, we find no violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

## II.

 The Proportional Contribution Clause of the Vermont Constitution has been construed to be the practical equivalent of the Equal Protection Clause. *Pabst v. Commissioner of Taxes*, 136 Vt. 126, 131 n.2, 132–33, 388 A.2d 1181, 1184 (1978) ; *In re Estate of Eddy*, 135 Vt. 468, 472, 380 A.2d 530, 533–34 (1977). For the same reasons stated in Part I above, we conclude that there has been no violation of the Proportional Contribution Clause.

## III.

 Plaintiff also contends that 32 V.S.A. § 8909 violates the Privileges and Immunities Clause of Article IV of the United States Constitution by failing to extend to new residents a credit for sales tax previously paid other states. Before this Court may apply the Clause to § 8909, however, we must first decide "whether the [statute] burdens one of those privileges and immunities protected by the Clause." *United Building and Construction Trades Council v. Mayor of Camden*, — U.S. —, —, 104 S. Ct. 1020, 1027 (1984) (citing *Baldwin v. Fish & Game Commission*, 436 U.S. 371, 383 (1978)). "Only with respect to those 'privileges' and 'immunities' bearing upon the vitality of the Nation as a single entity must the State treat all citizens, resident and nonresident, equally." *Baldwin v. Fish & Game Commission, supra*, 436 U.S. at 383. Thus the Privileges and Immunities Clause will not come into play unless a basic or fundamental right is involved.

 Plaintiff argues that his right to travel is infringed by the requirement that he pay a use tax to register his vehicle, without being granted the same exemption or credit afforded to state residents. As we have previously noted, the right to travel, although a fundamental right, *Shapiro v. Thompson, supra*, 394 U.S. at 630, is not involved herein. Accordingly, the Privileges and Immunities Clause of the United

States Constitution does not come into play, and there has been no violation of that constitutional clause.

## IV.

Finally, plaintiff invokes the Commerce Clause in support of his cause, contending that Vermont's purchase and use tax discriminates against interstate commerce by failing to provide equal treatment for out-of-state purchases.

In order for the Commerce Clause to apply, the transaction at issue must be one that comes within the scope of interstate commerce. Because "interstate commerce" is a term of such wide implications and ramifications, the courts have carefully avoided any attempt to give it a comprehensive definition. *Gross Income Tax Division* v. *J. L. Cox & Son,* 227 Ind. 468, 475, 86 N.E.2d 693, 696 (1949).

Generally speaking, the indispensable element in interstate commerce is the importation of people or goods, even one's own goods, into one state from another. *Heart of Atlanta Motel, Inc.* v. *United States,* 379 U.S. 241, 255–56 (1964) ; *United States* v. *Hill,* 248 U.S. 420, 423–24 (1919). Whether the movement is commercial in nature is immaterial. *Heart of Atlanta Motel, Inc.* v. *United States, supra,* 379 U.S. at 256. It has long been settled that when personal property has been brought into a state and come to a permanent rest, or merely halted for a moment before resuming its interstate journey, taxes upon the privilege of use, storage or consumption within the state do not impose an unconstitutional burden on interstate commerce. *General Trading Co.* v. *State Tax Commission,* 322 U.S. 335, 338 (1944) ; *Henneford* v. *Silas Mason Co., supra,* 300 U.S. at 582–83; *Brown* v. *Houston,* 114 U.S. 622, 633 (1885). In the words of Justice Cardozo, "A tax upon the privilege of use or storage when the chattel used or stored has ceased to be in transit is now an impost so common that its validity has been withdrawn from the arena of debate." *Henneford* v. *Silas Mason Co., supra,* 300 U.S. at 583.

There can be no doubt that at all relevant times herein plaintiff and his vehicle had ceased to be in transit. His intention was to move to Vermont, and at the time he sought to register the vehicle both he and the vehicle had come to rest

in Vermont. Plaintiff's station wagon had become "part of the common mass of property within the state of destination," *id.* at 582, and was thus clearly an appropriate subject for the imposition of a nondiscriminatory use tax in Vermont. There has been no violation of the Commerce Clause.

*Affirmed.*