**Vermont State Colleges Faculty Federation, AFT Local 3180, AFL–CIO v. Vermont State Colleges**

[418 A.2d 34]

No. 207-79

Present: Barney, C.J., Daley, Larrow, Billings and Hill, JJ.

Opinion Filed June 11, 1980

452

*Hoff, Wilson & Powell, P.C.,* Burlington, for Plaintiff.

*Matthew I. Katz* of *Latham, Eastman, Schweyer & Tetzlaff,* Burlington, and *Arthur P. Menard* and *Nicholas DiGiovanni, Jr.,* of *Morgan, Brown, Kearns & Joy,* Boston, Massachusetts, for Defendant.

**Barney, C.J.** The plaintiff Federation petitioned the State Labor Relations Board charging that the defendant Vermont State Colleges engaged in an unfair labor practice by refusing to bargain in good faith on the issue of faculty governance. The Board dismissed the petition, and the plaintiff brings the issue here on appeal from that order.

The Colleges and the Federation were parties to a collective bargaining agreement which governed their relationship between December 18, 1976, and April 30, 1979. During negotiations for a successor agreement, the Federation proposed that Article 27 (Faculty Governance) of the old contract be incorporated into the new one. The Colleges took the position that governance was not a mandatory subject of collective bargaining and refused to discuss the subject.

It is undisputed that the text of Article 27 formed the substance of the Federation proposal on faculty governance. The Colleges conceded an obligation to bargain as to two procedures provided for by that Article—the selection of academic

unit coordinators and the assignment and scheduling of courses. It was as to the remaining provisions of Article 27 that the Colleges refused to bargain. We therefore look to those provisions rather than to any definition of the abstract phrase "faculty governance" to determine the nature of this dispute.

While expressly reserving to the Federation the exclusive right to bargain with the Colleges over conditions of employment, Article 27 recognizes "the desirability of some form of democratic faculty governance." It acknowledges that the president of each college has the final authority to determine matters of academic concern and establishes on each campus, as a nonexclusive instrument of faculty governance, a faculty assembly consisting solely of all full-time faculty and ranked librarians. It requires that matters of academic concern be "initiated" by the assemblies or by the presidents through the assemblies. It sets out a list of matters of academic concern which includes but is not limited to student admissions and retention policy, library policy, curricular policy, degree granting requirements, and the organization of academic programs. It specifically requires that proposals to abolish courses be considered by the assemblies.

We believe that these disputed provisions can be fairly characterized as proposing that the Federation's membership retain a right to be consulted through each college's assembly before the administration makes major academic policy decisions. As it has more colorfully been put, the Federation proposal "seeks a voice not a vote."

The Federation responded to the Colleges' refusal to negotiate by petitioning the Labor Board to issue an unfair labor practice complaint charging that the refusal violated 3 V.S.A. § 961(5). The complaint was issued and a hearing thereon was held.

After the hearing, but before a decision was issued, the parties did in fact enter a new collective bargaining agreement. The agreement does not provide for faculty governance but reserves the Federation's right to reopen negotiations if its position that the Colleges are obligated to bargain over that subject should finally prevail.

The Board's decision drew an analogy between our statutes obligating the Colleges to bargain, 3 V.S.A. §§ 961(5) and

904, and the comparable provisions of the National Labor Relations Act, 29 U.S.C. § 158(a) and (d). The federal statute has been interpreted to distinguish between mandatory and permissive subjects of bargaining. *NLRB* v. *American National Insurance Co.*, 343 U.S. 395 (1952); *NLRB* v. *Wooster Division of Borg-Warner Corp.*, 356 U.S. 342 (1958). The Board held that there is no mandatory duty to bargain over matters not directly bearing on working conditions and statutorily mandated subjects. It further held that the subjects about which the Colleges refused to bargain, except library policy as to which it did not find such a refusal, are not mandatory subjects.

Where appropriate, this Court has not hesitated to turn to federal case law for guidance in determining state labor law issues. E.g., *Firefighters Local #2628* v. *Brattleboro Fire Department*, 138 Vt. 347, 415 A.2d 243 (1980) (interpreting 21 V.S.A. § 1502(13) in light of federal cases under 29 U.S.C. § 152(11)); *In re Southwestern Vermont Education Assn.*, 136 Vt. 490, 396 A.2d 123 (1978) (interpreting the Vermont Municipal Employee Relations Act, 21 V.S.A. §§ 1721–1735, in light of federal cases under the National Labor Relations Act, 29 U.S.C. §§ 141–187). But this is not an instance where resort to federal law is necessary or appropriate. A comparison of the relevant provisions of the State Employees Labor Relations Act with those of the National Labor Relations Act suggests that, on this point at least, they are more different than they are alike.

Both Acts make it an unfair labor practice for an employer to refuse to bargain collectively with employee representatives. Compare 29 U.S.C. § 158(a) with 3 V.S.A. § 961(5). Both impose a mutual obligation on employers and employees to meet and confer in good faith. Compare 29 U.S.C. § 158(d) with 3 V.S.A. § 981. Here they part company. The 29 U.S.C. § 158(d) obligation is expressly with respect to wages, hours and conditions of employment. The 3 V.S.A. § 981 obligation is "with respect to all matters bargainable under the provisions of this chapter." Unlike the National Labor Relations Act, the State Employees Labor Relations Act further describes the scope of bargainable matters:

(a) All matters relating to the relationship between the employer and employees shall be the subject of collective bargaining except those matters which are prescribed or controlled by statute. Such matters appropriate for collective bargaining to the extent they are not prescribed or controlled by statute include but are not limited to:

(1) Wages, salaries, benefits and reimbursement practices relating to necessary expenses and the limits of reimbursable expenses;

(2) Minimum hours per week;

(3) Working conditions;

(4) Overtime compensation and related matters;

(5) Leave compensation and related matters;

(6) Reduction-in-force procedures;

(7) Grievance procedures;

(8) Terms of coverage and amount of employee financial participation in insurance programs; and

(9) Rules and regulations for personnel administration, except the following: rules and regulations relating to persons exempt from the classified service under section 311 of this title and rules and regulations relating to applicants for employment in state service and employees in an initial probationary status including any extension or extensions thereof provided such rules and regulations are not discriminatory by reason of an applicant's race, color, creed, sex or national origin.

(b) This chapter shall not be construed to be in derogation of, or contravene the spirit and intent of the merit system principles and the personnel laws.

3 V.S.A. § 904.

Presumably, this language was inserted advisedly, and with intent that it should be given meaning and force. *Town School District of St. Johnsbury* v. *Town School District of Topsham,* 122 Vt. 268, 272, 169 A.2d 352, 355 (1961); *Proulx* v. *Parrow,* 115 Vt. 232, 236, 56 A.2d 623, 626 (1948). Had the Legislature intended to adopt the same distinction between mandatory and permissive subjects of bargaining as that developed under the National Labor Relations Act, it knew how to invoke that body of law. See *Reed* v. *Allen,* 121 Vt. 202, 207, 153 A.2d 74, 77 (1959). The State Labor Relations Act, 21 V.S.A. §§ 1501–

1623 (which governs private collective bargaining situations in Vermont not within N.L.R.B. jurisdiction, 21 V.S.A. § 1505) was enacted in 1967, well before the 1969 enactment here in question. In enacting the State Labor Relations Act the Legislature adopted verbatim the language of 29 U.S.C. § 158(d) obligating employers and employees to bargain with respect to wages, hours and other terms and conditions of employment. 21 V.S.A. § 1621(e). It used remarkably similar language in 1973 when it enacted the Vermont Municipal Employee Relations Act, 21 V.S.A. §§ 1721–1735, again defining the obligation to bargain as applying to wages, hours and conditions of employment. 21 V.S.A. § 1725(a).

■■ We can only conclude that at the intervening point when the Legislature enacted the State Employees Labor Relations Act it used substantially different language with the intent of achieving a different result. Cf. *State* v. *Welch*, 135 Vt. 316, 321, 376 A.2d 351, 354 (1977) (where the same word is used in statutes in pari materia, it bears the same meaning throughout). Where, as here, a statute's meaning is plain and is directed toward a rational result, arguments that sound policy requires a contrary construction have no weight.

■ Given this legislative direction on the subject of the scope of the Colleges' obligation to bargain, the Labor Board erred when it turned to federal case law and adopted its mandatory-permissive bargaining dichotomy. The issue properly before the Board was not the application of that test. It was rather whether faculty governance is a matter "relating to the relationship between the employer and employees" and if so whether it was a matter "prescribed or controlled by statute." 3 V.S.A. § 904(a).

■ The Board did not expressly decide whether governance relates to the relationship between the Colleges and their faculty. However, as an alternate ground for its decision, it held that governance is outside the scope of collective bargaining under 3 V.S.A. § 904(a) because it is a matter prescribed or controlled by statute. We do not agree. The statute cited by the Board, 16 V.S.A. § 2174, does give the college trustees the authority to prescribe the terms of admission, courses of instruction and educational standards of the Colleges. This statu-

tory grant to the trustees of the authority to determine these subjects is not inconsistent with the idea of bargaining about whether and by what process the faculty will be given an opportunity to advise the board of trustees of its views on these issues. The statute does not provide that a subject is not open to bargaining if mentioned or referred to by statute, but only if prescribed or controlled thereby. These subjects are neither; § 2174 gives the *trustees* the authority to prescribe; it does not itself establish substantive policies. We think it plain that the exception dealing with matters prescribed or controlled by statute under 3 V.S.A. § 904(a) precludes collective bargaining only where the outcome of any negotiations has been statutorily predetermined or expressly committed exclusively to the discretion of one party. This is not such an instance.

Our conclusion in this respect is buttressed by the fact that 16 V.S.A. § 2174 also refers to matters which form the very heart of the collective bargaining process. It cannot be argued that the statute, by providing that the trustees should appoint professors and instructors and "prescribe their duties, salaries and terms of office," has removed these subjects from collective bargaining.

*The May 4, 1979, order of the Labor Relations Board dismissing the unfair labor practice complaint is reversed and the cause is remanded to the Board for the entry of an appropriate order under 3 V.S.A. § 965(d).*