## In re Linda Mullestein

[531 A.2d 890]

No. 85-295

Present: **Hill, Peck, Gibson and Hayes,\* JJ., and Keyser, J. (Ret.), Specially Assigned**

Opinion Filed June 12, 1987

---

\* Justice Hayes was present for oral argument but did not participate in this decision.

*Charles F. Yeiser, Jr.*, Worcester, for Plaintiff-Appellant.

*John H. Chase*, Office of Secretary of State, Montpelier, for Defendant-Appellee.

**Gibson, J.** This is an appeal from a superior court judgment affirming an administrative ruling of the Vermont Board of Registration of Architects (Vermont Board) denying appellant her licensure as an architect. We affirm.

The uncontroverted facts are as follows. In June of 1982, the appellant took a national standardized design exam prepared by the National Council of Architectural Registration Boards (NCARB) and administered by the Vermont Board. Pursuant to

26 V.S.A. § 201, the Vermont Board requires, among other things, a passing grade on the design exam before it will license a person as an architect in the State of Vermont. Except for her failure to attain a passing grade on the design exam, the appellant was fully qualified to be licensed by the Vermont Board.

The NCARB exam actually consists of two separate exams—a written exam and a design exam. Only the latter is at issue here. The appellant's design exam was graded in accordance with the Vermont Board's established grading procedure. After the exam was administered to the appellant and sixteen others on June 16, 1982, all exams were forwarded to NCARB, where they were graded by a trained NCARB grading team. Appellant's exam received a passing grade as did ten others; six were failures.

In accordance with its stated policy, upon receiving the NCARB grades, the Vermont Board regrades all exams it administers. If any of the Vermont Board's grades contradict NCARB's grades, the affected exams are returned to NCARB for a second review. NCARB assigns a team of new graders, who may uphold NCARB's original grade or concur with the state. The same grading procedures are utilized each time: by the first NCARB grading team, by the Vermont Board, and by NCARB's second review team. As a matter of policy, some states accept all passing grades given by the first NCARB grading team and conduct no review of their own. Only a minority of states regrade the exams as does Vermont.

Pursuant to the Vermont Board's grading procedure, appellant's passing NCARB grade was forwarded to the Vermont Board in late August of 1982. The Vermont Board met September 16, 1982, and regraded all seventeen exams given in June 1982. Thereafter, the appellant was given notice by the Vermont Board that her design exam was "under review" by letter dated September 22, 1982, some 97 days after she had taken the exam. Five exams were returned to NCARB because the Vermont Board had assigned them failing grades. NCARB's second review team concurred with the Vermont Board on four of the five exams, including appellant's. On December 21, 1982, NCARB notified the Vermont Board of its concurrence on those four exams, and on December 27, 1982, some 194 days after appellant took the exam, the Vermont Board informed her that she had failed the design exam.

The Vermont Board denied appellant's application for an architect's license based on her failure to achieve a passing grade on the design exam, and she appealed that denial to the Appeals Panel, pursuant to 3 V.S.A. § 114a(d). The Appeals Panel affirmed the denial, and appellant appealed to superior court, which also affirmed the denial. She now appeals to this Court.

Appellant raises two major contentions on appeal. First, she argues that the Vermont Board acted unlawfully and beyond the scope of its authority when it sent her exam back to NCARB to be regraded once the 60-day notification period set forth in 26 V.S.A. § 201(b) had expired. Secondly, she contends that the Vermont Board's grading procedure denies federal and state equal protection of the law to applicants like herself who sit for the exam in Vermont. We consider these two issues in the order presented.

## I.

Appellant first urges that her original passing grade should be reinstated because the Vermont Board violated 26 V.S.A. § 201(b) when it failed to notify her of her exam status within the prescribed 60-day period. Prior to its amendment in 1986, 26 V.S.A. 201(b) read as follows:

> [h]e shall, in order to become registered, pass written examinations under a syllabus prepared by the board, in such technical and professional subjects as may be prescribed by the board. Notification of the results of such examinations shall be mailed to each candidate within *sixty days* thereafter. (Emphasis added.)

In essence, appellant argues that 26 V.S.A. § 201(b) implied a particular remedy for the violation—namely, that any Vermont Board action after the sixtieth day was unlawful, and therefore, it had no choice but to accept her passing grade. Appellant's conclusion that the Vermont Board's action was invalid can be drawn only if the language in 26 V.S.A. § 201(b) is mandatory, rather than directory in nature. See *Warner* v. *Mower*, 11 Vt. 385, 394 (1839). We find it to be the latter for several reasons.

It is generally well-accepted law that " '[a] statutory time period is not mandatory unless it *both* expressly requires an agency or public official to act within a particular time period *and*

specifies a consequence for failure to comply with the provision.' " *Thomas* v. *Barry*, 729 F.2d 1469, 1470 n.5 (D.C. Cir. 1984) (quoting *Fort Worth National Corp.* v. *Federal Savings & Loan Insurance Corp.*, 469 F.2d 47, 58 (5th Cir. 1972) (emphasis added)). The determination of whether statutory language is mandatory or directory is one of legislative intent. *Warner*, 11 Vt. at 394; see *In re Estate of Cartmell*, 120 Vt. 228, 230, 138 A.2d 588, 589 (1958). The legislative intent test was stated by this Court many years ago: "When the statute is merely directory,—i.e. directs the manner of doing a thing, and is not of the essence of the authority for doing it,—a compliance with its requisitions is never considered essential to the validity of the proceeding, unless such is the expressed or evident intention of the legislature." *Warner*, 11 Vt. at 394; see also *Andrizinsky* v. *Phillips*, 97 Vt. 21, 22, 121 A. 435, 435 (1923) (statutory provision as to time when a judge shall prepare a jury list is to be regarded as directory, and not as a limitation of powers, where statute contains no words negativing or denying the power to file such list after the time named).

█ The rule set down in *Warner* leads us to conclude that the 60-day provision was intended to have only a directory effect. Where the Legislature has intended a time limit to be mandatory, it has clearly expressed that intent. For instance, in 24 V.S.A. § 4470(a), a zoning provision, the Legislature specifically provided for a mandatory time limit, by stating that if the "board does not render its decision within the period prescribed by this chapter, the board shall be deemed to have rendered a decision in favor of the appellant and granted the relief requested by him on the last day of such period." In interpreting that statute, this Court held that such language was mandatory, not directory. *Glabach* v. *Sardelli*, 132 Vt. 490, 495, 321 A.2d 1, 5 (1974). In that statute, the consequence of failure to meet the time limit is expressly stated. By contrast, the language of 26 V.S.A. § 201(b) provides no suggestion of a remedy for exceeding the 60-day time limit. Rather, its language relates to procedure: it "directs the manner of doing a thing, and is not of the essence of the authority for doing it . . . ." *Warner*, 11 Vt. at 394. In the absence of express statutory language to the contrary, we hold that the language of 26 V.S.A. § 201(b) is directory. Accordingly, the Vermont Board's notification after the sixtieth day was valid and lawful.

## II.

Appellant's second contention is that the Vermont Board's regrading procedure denied appellant the equal protection of the law guaranteed by both the Vermont and federal constitutions. Appellant raises her state constitutional argument here for the first time; it was not raised before the trial court, nor was that court's decision based upon it. Issues not presented below will not be considered on appeal. *Lockwood* v. *Bougher*, 145 Vt. 329, 330, 488 A.2d 754, 755 (1985). The state constitutional issue therefore is not properly before this Court.

We now turn to appellant's federal constitutional claim. The thrust of appellant's federal equal protection argument is that the Vermont Board's regrading procedure subjects Vermont residents, like herself, to harsher standards than nonresidents. The objective of equal protection analysis is to measure the validity of classifications created by statute, or in this case, the administrative policy flowing from the statute. As a threshold issue, we do not believe that the classification that appellant asserts as invalid, namely, residency, is at issue. The trial court's findings reveal that the applicant's residency is irrelevant to the Vermont Board's determination as to who may, and who may not, have a design exam reviewed and remanded to the NCARB. Indeed, the Vermont Board regrades all of the design exams administered in Vermont. Moreover, as is its policy, the Vermont Board conducts this regrading without regard to the applicants' names, residences, or NCARB scores. The June 1982 exams, including appellant's exam, were regraded according to these procedures. In short, appellant's contention that the alleged discriminatory classification is residency-based is without factual support.

Rather, we find that the relevant classification is (1) those who sat for the exam in Vermont, and (2) those who sat for the exam out of state. The Vermont Board requires the exams of those in the former group to be regraded and possibly remanded to the NCARB, but does not require this procedure of the exams of those in the latter group.

Appellant rightly concedes that the Vermont Board's regrading policy should be evaluated by the rational basis test, as the involved classifications do not involve a fundamental right or suspect class. *Colchester Fire District No. 2* v. *Sharrow*, 145 Vt. 195, 198, 485 A.2d 134, 136 (1984). Thus, this Court is called upon to

determine only whether the Board's action " 'classifies similar persons for different treatment upon wholly arbitrary and capricious grounds. . . .' " *Id.* at 199, 485 A.2d at 136 (quoting *Hadwen, Inc.* v. *Department of Taxes*, 139 Vt. 37, 42, 422 A.2d 255, 258-59 (1980)). If the classification is based on " 'some reasonable consideration of legislative policy,' " it is constitutional. *Id.*

Hence, our analysis is two-pronged: first, we must query whether there is a legitimate state purpose, and second, whether the Vermont Board's action is rationally related to that purpose. Appellant does not contend the legitimacy of the state purpose here; she asserts that the purpose of "Chapter 3 of Title 26 is to ensure that those practicing architecture in Vermont are trained and competent." We agree.

She does, however, challenge the Vermont Board's policy of regrading as being arbitrary and capricious, bearing no relationship whatsoever to the legislative purpose. The standard of review in determining the rational basis of such a policy is not stringent. "[T]he state law stands as long as the burden it imposes is found to be rationally related to [a legitimate] purpose, a relationship that is not difficult to establish." *Metropolitan Life Insurance Co.* v. *Ward*, 470 U.S. 869, 881 (1985); see also *Andrews* v. *Lathrop*, 132 Vt. 256, 259, 315 A.2d 860, 864 (1974) (the statute will be upheld "if any reasonable policy or purpose for the legislative classification may be conceived of . . . .").

■ The challenged policy of the Vermont Board is twofold. First, the Board regrades all exams it administers, and secondly, it accepts scores from exams administered by other states whether or not that state regrades. In the first instance, the Vermont Board returns to NCARB only those exams that received inconsistent grades from NCARB. The Vermont Board's regrading policy cannot be characterized as arbitrary and capricious given that "[a] state has a valid interest in regulating professions . . . ." *Heisse* v. *Vermont*, 519 F. Supp. 36, 45 (D. Vt. 1980). We agree with appellee that the Vermont Board's practice is rationally related to its purpose of assuring the accuracy of the tests it administers. The procedure has the effect of assuring both the qualifications of the candidates the Vermont Board registers and the results it certifies to NCARB.

■ The Vermont Board's second practice of admitting out-of-state licensed architects is premised on the assumption that the

out-of-state architect licensing requirements are not beneath the standards set by the Vermont Board. Again, the disparate treatment given those examinees who sat for the test in Vermont and those who sat for the test out of state is the regrading procedure required of the first set of examinees. We have already concluded that such procedure is rationally related to a concededly legitimate state objective. In conducting an equal protection analysis, the Court need not determine whether the state has superior means available to accomplish its objective, but whether the method it has chosen is a reasonable one. *Andrews* v. *Lathrop*, 132 Vt. at 259, 315 A.2d at 863. In sum, we hold that the Vermont Board's procedures are rationally related to a legitimate purpose, and therefore, appellant's federal equal protection challenge must fail.

*Affirmed.*