## State of Vermont v. Thomas Camolli

[591 A.2d 53]

No. 90-224

Present: Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.

Opinion Filed February 19, 1991

Motion for Reargument Denied March 20, 1991

*Gary S. Kessler,* Supervising Appellate Prosecutor, and *Pamela Hall Johnson,* Appellate Prosecutor (On the Brief), Montpelier, for Plaintiff-Appellant.

*Hertz and Wesley,* Brattleboro, for Defendant-Appellee.

**Gibson, J.** The State of Vermont appeals, pursuant to 23 V.S.A. § 1205(i), from a district court decision dismissing the State's civil-license-suspension proceeding against Thomas A. Camolli. We reverse.

## I.

The relevant facts are as follows. On January 21, 1990, defendant was stopped by a state trooper and processed for driving while under the influence of intoxicating liquor. A breath sample was collected by means of a gas chromatography (crimper) testing device. Analysis of the sample on February 15, 1990 by the Department of Health revealed a blood-alcohol content of 0.15 percent. The trooper received the lab report on February 28, 1990, and completed the affidavit required by § 1205(a) that same day. The next day he mailed defendant a notice of intention to suspend driver's license.

Defendant timely requested a hearing before the district court. At the hearing, defendant orally moved to dismiss the proceeding. The court granted the motion, holding that § 1205 was intended to be used only with infrared testing equipment and not with a crimper device, and that the State had not complied with § 1205(b)'s requirement that notice of intent to suspend be mailed immediately. On appeal, the State contends that the district court erred on both grounds. Defendant has moved to dismiss the appeal on grounds that the State is not allowed to appeal from the district court's decision.

## II.

We turn first to defendant's threshold argument, that 23 V.S.A. § 1205(i) does not authorize the State's appeal. Section 1205(i) provides that "[a] decision of the district court under this section may be appealed as a matter of right to the supreme court. The suspension shall not be stayed pending appeal unless the defendant is reasonably likely to prevail on appeal." Defendant asserts that the State may not appeal because (1) the trial court's decision was not a decision "under this section," and (2) any right of appeal under § 1205(i) is limited, by implication, to a motor vehicle operator.

■ With respect to his first point, defendant contends that the right of appeal found in § 1205(i) is limited to the issues delineated in § 1205(f)[1] and that the trial court never reached the merits of those issues. Section 1205(i) does not, however, limit the right of appeal to the issues set forth in subsection (f). Instead, it grants a right of appeal from any decision made "under this section." As defendant concedes, the word "section" ordinarily refers to the entire section, not just one of its subsections. The hearing held by the district court was convened pursuant to § 1205. The fact that the decision was based on what the court considered to be jurisdictional and procedural irregularities did not take the proceeding out from under the section. The statute's meaning is plain on its face; the term "section" encompasses all of § 1205, and the district court's decision was therefore one made "under" § 1205.

■ Nor are we convinced by defendant's argument that the reference in the second sentence of subsection (i) to "[t]he suspension" necessarily implies that the Legislature intended to afford only the defendant the right to appeal an adverse decision. Instead, we think that the two sentences may be read in-

---

[1] 23 V.S.A. § 1205(f) provides:

(f) **Issues at hearing.** The issues at the hearing shall be limited to the following:

· (1) whether the law enforcement officer had reasonable grounds to believe the person was operating, attempting to operate or in actual physical control of a vehicle in violation of section 1201 of this title;

(2) whether at the time of the request for the evidentiary test the officer informed the person of the person's rights and the consequences of taking and refusing the test substantially as set out in subsection 1202(d) of this title;

(3) whether the person refused to permit the test;

(4) whether the test was taken and the test results indicated that there was 0.10 percent or more by weight of alcohol in the blood at the time of operating, attempting to operate or being in actual physical control of a vehicle in violation of section 1201 of this title, whether the testing methods used were valid and reliable and whether the test results were accurate and accurately evaluated. Evidence that the test was taken and evaluated in compliance with rules adopted by the department of health shall be prima facie evidence that the testing methods used were valid and reliable and that the test results are accurate and were accurately evaluated;

(5) whether the requirements of section 1202 of this title were complied with.

dependently. The first sentence authorizes an appeal from any adverse decision made by the district court under § 1205. The second sentence addresses the distinct issue of obtaining a stay in the event the defendant loses before the district court and is reasonably likely to prevail on appeal. Defendant's motion to dismiss the appeal is accordingly denied.

## III.

### A.

The State's first argument on the merits is that the district court erroneously decided that § 1205's summary suspension procedure is not available when the crimper device is used. Defendant counters that the express terms of § 1205 support the district court's conclusion.

 Section 1205(a) does not distinguish between types of tests. Rather, the statute speaks generally in terms of "*a* test." 23 V.S.A. § 1205(a) (emphasis added).[2] While § 1200(3) defines "evidentiary test" to include both breath and blood tests,[3] the

---

[2] 23 V.S.A. § 1205(a) provides:

(a) **Refusal; BAC of 0.10 or more; suspension periods.** Upon affidavit of a law enforcement officer that the officer had reasonable grounds to believe that the person was operating, attempting to operate, or in actual physical control of a vehicle in violation of section 1201 of this title and that the person refused to submit to a test, the commissioner shall, unless the person requests a hearing, suspend the person's operating license, or nonresident operating privilege, or the privilege of an unlicensed operator to operate a vehicle for a period of six months and until the person complies with section 1209a of this title. Upon affidavit of a law enforcement officer that the officer had reasonable grounds to believe that the person was operating, attempting to operate, or in actual physical control of a vehicle in violation of section 1201 of this title and that the person submitted to a test and the test results indicated that there was 0.10 percent or more by weight of alcohol in the blood at the time of operating, attempting to operate or being in actual physical control, the commissioner shall, unless the person requests a hearing, suspend the person's operating license, or nonresident operating privilege, or the privilege of an unlicensed operator to operate a vehicle for a period of 90 days and until the person complies with section 1209a of this title.

[3] 23 V.S.A. § 1200(3) provides as follows:

As used in this subchapter,

. . . .

statute does not define the word "test." "Words used in a statute which have not been specifically defined in that statute are to be given their plain and commonly accepted meaning." *Vincent v. Vermont State Retirement Bd.*, 148 Vt. 531, 535–36, 536 A.2d 925, 928 (1987). "Test" is a generic term, referring, at the very least, to the use of crimpers in addition to the infrared test. Had the Legislature intended to distinguish between specific tests, it would have used specific test names rather than the generic term "test." See *Vermont State Colleges Faculty Fed'n v. Vermont State Colleges*, 138 Vt. 451, 455, 418 A.2d 34, 37 (1980) ("Presumably, this language was inserted advisedly, and with intent that it should be given meaning and force."). Section 1205's summary suspension procedure is accordingly available for use when a crimper testing device is used.

## B.

The State also contends that the district court erroneously computed the time period for § 1205(b)'s immediate-notice requirement. The district court concluded that immediate notice of intent to suspend should be computed from the time the sample is analyzed and the result obtained, if not the time when the defendant is stopped by the law enforcement officer. Section 1205(b) provides, in relevant part:

> On behalf of the commissioner of motor vehicles, a law enforcement officer requesting or directing the administration of an evidentiary test shall serve *immediate notice* of intention to suspend and of suspension . . . on a person who submits to a test the results of which indicate that there was 0.10 percent or more by weight of alcohol in the blood . . . . The notice shall be signed by the law enforcement officer requesting the test. A copy of the notice shall be sent to the state's attorney and the commissioner of motor vehicles and a copy shall be mailed or given to the defendant. If mailed, the notice is deemed received three days af-

---

(3) "Evidentiary test" means a breath or blood test which indicates the weight of alcohol in a person's blood, as shown by analysis of the person's breath or blood and which is intended to be introduced as evidence.

Both the infrared and crimper testing devices are evidentiary tests.

ter mailing to the address provided by the defendant to the law enforcement officer. A copy of the affidavit of the law enforcement officer shall also be mailed or given to the defendant within seven days of the date of notice, return receipt requested.

(Emphasis added.)

■■ The district court's conclusion that the time for giving "immediate notice of intent to suspend" begins when the sample is analyzed, if not at the time of the initial stop, is inconsistent with the statutory language and would lead to an irrational result. The statute makes clear that the law enforcement officer who requested administration of the test must give notice of intention to suspend a license. In cases where a test is administered, the officer must have knowledge of the test results before he can send a suspension notice. If, as we have held, the statute contemplates that an officer may use a crimper device, the officer will not be in a position to give notice of an intent to suspend until the results of the test are available. The statute provides for this contingency by authorizing the notice and affidavit to be sent by mail. It is the law enforcement officer, not the chemist, who has defendant's address. Accordingly, we hold that, where a test has been administered, the time period begins to run when the law enforcement officer receives the test results.

The statutory purpose is "speedy license revocation for those who refuse a breath test or whose breath test exceeds the statutory limit[,] in a manner fair to each defendant." Reporter's Notes, D.C.C.R. 80.5. Here, the law enforcement officer received the test results on February 28, 1990. He then completed the § 1205(a) affidavit and, the next day, mailed the notice of intent to suspend. In these circumstances, the one-day delay in mailing is, as a matter of law, within § 1205(b)'s meaning of the word "immediate."

■■ Further, compliance with the statutory requirement that notice be mailed immediately is merely directory and not mandatory. Where a statute's language is directory, compliance is not essential to a proceeding's validity. See *In re J.R.*, 153 Vt. 85, 92, 570 A.2d 154, 157 (1989). "The determination of whether statutory language is mandatory or directory is one of legislative intent." *In re Mullestein*, 148 Vt. 170, 174, 531 A.2d 890,

892 (1987). We have previously stated that "'"[a] statutory time period is not mandatory unless it *both* expressly requires an agency or public official to act within a particular time period *and* specifies a consequence for failure to comply with the provision."'" *Id.* at 173–74, 531 A.2d at 892 (emphasis in original) (quoting *Thomas v. Barry*, 729 F.2d 1469, 1470 n.5 (D.C. Cir. 1984) (quoting *Fort Worth Nat'l Corp. v. Federal Sav. & Loan Ins. Corp.*, 469 F.2d 47, 58 (5th Cir. 1972))). But see *Sierra Pacific Indus. v. Lyng*, 866 F.2d 1099, 1112 (9th Cir. 1989) (affirming district court imposition of sanction pursuant to its equitable powers where government failed to comply with statutory time period and enforcement of the deadline served statutory purpose). In the instant case, the statute entirely fails to specify a consequence for failure to comply. Dismissal would be an unwarranted sanction and would unnecessarily undermine legislative intent of a "speedy license revocation . . . in a manner fair to each defendant." Defendant's legal rights were not prejudiced since the effective date for his suspension was dependent on the date the notice of intent to suspend was mailed, see 23 V.S.A. § 1205(b) and (d), and he did in fact receive the notice in ample time to request a hearing pursuant to § 1205. Accordingly, we hold that the notice of intent to suspend validly initiated the license-suspension procedure.

*Defendant's motion to dismiss is denied. The trial court's decision is reversed and the cause remanded for a hearing under 23 V.S.A. § 1205(f).*