### State of Vermont v. Eldon W. Singer

[749 A.2d 614]

No. 98-578

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed February 4, 2000

*Lauren Bowerman*, Chittenden County State's Attorney, and *John R. Treadwell*, Deputy State's Attorney, Burlington, for Plaintiff-Appellant.

*Paul D. Jarvis* and *Robert S. Behrens* of *Jarvis and Kaplan*, Burlington, for Defendant-Appellee.

**Skoglund, J.** The State appeals from the district court's dismissal of the civil license suspension proceeding against defendant Eldon Singer. The court dismissed the matter because a final hearing could not be held within forty-two days of the date of the alleged offense, and the State had not shown good cause for the delay. See 23 V.S.A. § 1205(h). We affirm.

The relevant facts are not in dispute. On October 17, 1998, defendant was charged with driving while intoxicated (DWI), in violation of 23 V.S.A. § 1201. The police officer who charged defendant did not administer a breath test; rather, defendant was taken to Fletcher Allen Health Care, where a sample of his blood was obtained. On December 9, 1998, the officer delivered to defendant a notice of intent to suspend his driver's license. See *id.* § 1205(c). On December 11, 1998, defendant requested a hearing before the district court on the issue of license suspension. See *id.* § 1205(f).

The court held a preliminary hearing on December 24, 1998, see *id.* § 1205(g), at which time defendant asked the court to dismiss the civil suspension proceeding because a final hearing could not be held within forty-two days of the date of the alleged offense as required by statute. See *id.* § 1205(h). The State argued that the language of § 1205(h) was directory, not mandatory, and that it had good cause for the delay in this case because defendant had been given a blood test. According to the State, a blood test is per se good cause. The court disagreed, holding that the language of the statute was mandatory, and that the fact that the State was relying on a blood test, rather than a breath test, was not, in and of itself, good cause for the delay. The State appealed pursuant to 23 V.S.A. § 1205(k).

The State argues that the court erred in dismissing the civil suspension proceeding because (1) the language of 23 V.S.A. § 1205(h) is directory, not mandatory, (2) a blood test is per se good cause, and (3) the court did not give the State an opportunity to develop its argument that a blood test is per se good cause. We address these arguments in order.

23 V.S.A. § 1205(h) states, in relevant part:

> If the defendant requests a hearing on the merits, the court shall schedule a final hearing on the merits to be held within 21 days of the date of the preliminary hearing. In no event may a final hearing occur more than 42 days after the date of the alleged offense without the consent of the defendant or for good cause shown. The final hearing may only be continued by the consent of the defendant or for good cause shown.

According to the State, the statute does not specify a consequence for failure to comply with the forty-two-day time limit, and therefore, the statute is directory, not mandatory. We disagree.

■■ As we have previously stated, "[t]he determination of whether statutory language is mandatory or directory is one of legislative intent." *In re Mullestein*, 148 Vt. 170, 174, 531 A.2d 890, 892 (1987). In *Mullestein*, we held that a statutory time limit is directory when it "'directs the manner of doing a thing, and is not of the essence of the authority for doing it.'" *Id.* at 174, 531 A.2d at 892-93 (quoting *Warner v. Mower*, 11 Vt. 385, 394 (1839)). In other words, the language of a directory statute "relates to procedure." *Id.* at 174, 531 A.2d at 893. See also *State v. Camolli*, 156 Vt. 208, 214, 591 A.2d 53, 57 (1991) ("Where a statute's language is directory, compliance is not essential to a proceeding's validity."). On the other hand, a statutory time limit is mandatory only if it contains both an express requirement that an action be undertaken within a particular amount of time and a specified consequence for failure to comply with the time limit. See *Mullestein*, 148 Vt. at 174, 531 A.2d at 892-93. Thus, "[w]here the Legislature has intended a time limit to be mandatory, it has clearly expressed that intent." *Id.* at 174, 531 A.2d at 893.

As noted, 23 V.S.A. § 1205(h) provides, in pertinent part: "In no event may a final hearing occur more than 42 days after the date of the alleged offense without the consent of the defendant or for good cause shown." Thus, in the event the court cannot, or does not, hold

a final hearing until more than forty-two days after the date of the alleged offense, the Legislature has specified a consequence: no hearing is to occur on the matter. Therefore, the time requirement does not relate merely to procedure, nor does it simply direct the manner of holding a civil license suspension hearing. Rather, the forty-two-day requirement is "'of the essence of the authority'" for holding a license suspension hearing. *Id.* at 174, 531 A.2d at 892-93 (quoting *Mower*, 11 Vt. at 394). Here, by providing for a consequence for failure to comply with the mandated time limit, the Legislature has clearly expressed its intent that the time limit be mandatory.

This is in contrast to the statutes at issue in *Mullestein* and *Camolli*, relied upon by the State. In *Mullestein*, Linda Mullestein (the applicant) applied for an architect's license from the Vermont Board of Registration of Architects' (Vermont Board). As a prerequisite to licensure, the Vermont Board required, among other things, a passing grade on the national standardized design exam. The applicant took the design exam in June 1982. Pursuant to the Vermont Board's procedures, exams were graded first by the National Council of Architectural Registration Boards and subsequently graded independently by the Vermont Board. If the two grade results differed, the exam was sent back to the National Board for regrading. In Mullestein's case, the two boards reached different results: the National Board determined that she had passed, the Vermont Board determined she had failed. Following a regrading, the National Board agreed with the result reached by the Vermont Board. On December 27, 1982, 194 days after the applicant had taken the exam, the Vermont Board informed her that she had failed the exam.

On appeal to this Court, the applicant pointed out that, under the architect licensing statute, 26 V.S.A. § 201(b), the Vermont Board was required to notify her of the results of the exam within sixty days of the date she had taken it. See *Mullestein*, 148 Vt. at 173, 531 A.2d at 892 ("'[The applicant] shall, in order to become registered, pass written examinations under a syllabus prepared by the board . . . . Notification of the results . . . shall be mailed to each candidate within *sixty days* thereafter.'") (quoting 26 V.S.A. § 201(b)). She argued that the sixty-day time limit was mandatory, and that, after sixty days had expired, the Vermont Board had no authority to take any action with regard to her exam, and thus was required to accept the initial passing grade. We disagreed, holding that the language of the architect licensing statute provided no consequence for failure to meet the statutory time limit. As we stated, "its language relates to

procedure: it 'directs the manner of doing a thing, and is not of the essence of the authority for doing it.'" *Id.* at 174, 531 A.2d at 892-93 (quoting *Mower*, 11 Vt. at 394). Therefore, we held that the language of 26 V.S.A. § 201(b) was directory, not mandatory, and upheld the Vermont Board's decision.

In *Camolli*, the defendant was stopped by a state trooper and processed for DWI on January 21, 1990. The trooper administered a breath test using a gas chromatography (crimper) device. He received the lab report on February 28, 1990, and, the next day, mailed the defendant a notice of intention to suspend his driver's license. The defendant timely requested a civil license suspension hearing. At the hearing, the defendant moved to dismiss the civil license suspension proceeding. The district court granted the motion, holding that (1) under 23 V.S.A. § 1205(a), evidence obtained from a crimper device could not be used in a civil license suspension proceeding; only evidence obtained from infrared testing equipment could be used, and (2) the trooper failed to serve the defendant with "immediate notice" of intention to suspend his license, as required by 23 V.S.A. § 1205(b). *Camolli*, 156 Vt. at 210, 591 A.2d at 54-55. We concluded that the court erred on both grounds.

On the issue of whether the trooper had complied with the statute's notice requirement, we held that the language of 23 V.S.A. § 1205(b) was directory, not mandatory, and therefore, a failure to timely serve the defendant with notice did not require dismissal of the proceeding. 23 V.S.A. § 1205(b), provided, in pertinent part: "On behalf of the commissioner of motor vehicles, a law enforcement officer requesting or directing the administration of an evidentiary test shall serve *immediate notice* of intention to suspend and of suspension . . . on a person who submits to a test the results of which indicate that there was 0.10 percent or more by weight of alcohol in the blood . . . ." *Id.* at 213, 591 A.2d at 56 (quoting 23 V.S.A. § 1205(b)). However, as we noted, "the statute entirely fails to specify a consequence for failure to comply." *Id.* at 215, 591 A.2d at 57. Therefore, we concluded, the requirement of immediate notice was directory, not mandatory, and the district court erred in dismissing the case.

The State also relies on *State v. Skilling*, 157 Vt. 647, 595 A.2d 1346 (1991) (mem.). There, the defendant's driver's license was suspended pursuant to 23 V.S.A. § 1205. On appeal, he argued, among other things, that the proceeding should have been dismissed because the court did not hold a hearing within the statutory time limit. At that time, the time limit was contained in 23 V.S.A. § 1205(e), which

provided: "Unless continued for good cause shown, the hearing shall be held not later than 30 days from the date the request for hearing is received by the commissioner." 1991, No. 55, § 6. In *Skilling*, we held that the thirty-day time limit contained in 23 V.S.A. § 1205(e) was directory "because the statute [did] not specify any consequence for failure to comply." *Id.* at 648, 595 A.2d at 1347.

Since our decision in *Skilling*, the statute has been amended. The statutory time limit now appears in 23 V.S.A. § 1205(h), quoted above, and contains an express consequence for failure to meet the time limit imposed. The Legislature was clear: if the hearing is not held within the requisite time limit, no hearing is to be held.

Our decision herein is akin to that of *Glabach v. Sardelli*, 132 Vt. 490, 321 A.2d 1 (1974), *overruled on other grounds by Leo's Motors, Inc. v. Town of Manchester*, 158 Vt. 561, 613 A.2d 196 (1992). There, we held that the language of 24 V.S.A. § 4470(a), a zoning statute, was mandatory, not directory. See *id.* at 495, 321 A.2d at 5. The governing statute in *Sardelli* provided that, "[i]f the board does not render its decision within the period prescribed by this chapter, the board shall be deemed to have rendered a decision in favor of the appellant and granted the relief requested by him on the last day of such period." 24 V.S.A. § 4470(a). Thus, the language of 24 V.S.A. § 4470(a) expressly provided for a consequence for the board's failure to meet the statutory time limit.

Finally, it bears noting that, if the Legislature had intended for the forty-two-day time limit to be directory and not mandatory, it would not have included exceptions. Indeed, if the time limit were directory, the State would have no need to justify a delay by demonstrating that it had either the defendant's consent or good cause. Thus, if the time limit were directory, the statutory exceptions would be mere surplusage, a result we avoid in interpreting statutes. See *State v. Hatcher*, 167 Vt. 338, 343-44, 706 A.2d 429, 432 (1997) ("Defendant's construction of the statute would render the deliberation element of first-degree murder mere surplusage, a result which we have repeatedly cautioned against."); *Vermont State Colleges Faculty Fed'n v. Vermont State Colleges*, 138 Vt. 451, 455, 418 A.2d 34, 37 (1980) ("Presumably, this language was inserted advisedly, and with intent that it should be given meaning and force.").

■ Therefore, we conclude that the language of 23 V.S.A. § 1205(h) is mandatory: if a final hearing is not held within forty-two days of the date of the alleged offense, the civil license suspension proceeding must be dismissed unless the State demonstrates either that it had

the defendant's consent or good cause for the delay. We next discuss whether, in this case, the State has demonstrated good cause.

The State argues that it had good cause for the delay because defendant was given a blood test rather than a breath test. According to the State, obtaining a blood test is per se good cause. We disagree.

First, as the trial court noted, in enacting the civil license suspension statute, the Legislature did not distinguish between types of tests. As we noted in *Camolli*, "the statute speaks generally in terms of 'a test.'" *Camolli*, 156 Vt. at 212, 591 A.2d at 56 (quoting 23 V.S.A. § 1205(a)). Had the Legislature intended to distinguish between a blood test and a breath test for purposes of good cause, it would have included language to that effect. See *id.* at 213, 591 A.2d at 56.

■ Furthermore, whether good cause exists is a mixed question of fact and law. See, e.g., *State v. Palmer*, 169 Vt. 639, 640, 740 A.2d 356, 358 (1999) (mem.); *State v. Ahearn*, 137 Vt. 253, 263, 403 A.2d 696, 703 (1979). In some cases, difficulty in capturing or analyzing a blood test, for example, may provide good cause for a delay. Here, however, the State neither presented, nor attempted to present, any facts to support a finding of good cause other than simply stating that a blood test was involved. Therefore, the court did not err in concluding that the State failed to show good cause for the delay.

Finally, the State argues that the court erred, and the case should be remanded, because the court did not allow the State to develop its argument that there was good cause for a delay. However, an examination of the transcript reveals that the State had a sufficient opportunity to develop its argument at the hearing. There was no error.

*Affirmed.*