DOOLEY, J., dissenting.
¶ 18. The majority's decision includes a simple flaw in its reasoning-namely that "the Legislature enacted subsection (t) in the wake of Singer and articulated when the time limits in subsections (g) and (h) should be mandatory and when they should be directive." Ante, ¶ 13. This is not an accurate statement. By its plain language, the Legislature articulated only when the time limits of subsections (g) and (h) should be directive. Neither this Court nor the Legislature has explicitly answered whether the twenty-one-day time limits in those subsections are ever mandatory for second or subsequent offenses. And while statutory amendments are, indeed, to be given "real and substantial effect," we should not overreach and read more into an amendment than is in fact there. See id. (quoting Stone v. Immigr. & Naturalization Serv., 514 U.S. 386, 397, 115 S.Ct. 1537, 131 L.Ed.2d 465 (1995) ). For this and the following reasons, I respectfully dissent.
¶ 19. Two strong reasons support my statutory construction. First, while it is true that State v. Singer did not address whether the twenty-one-day limit at issue in this case was mandatory or directory, no one who reads the decision in Singer could believe that it was mandatory. Why is this true? Because Singer explained in detail what characteristics of a time limit are required to make it mandatory and none of those characteristics are present in the twenty-one-day time limit under the statute as it existed then and exists today. As this Court explained: "[A] statutory time limit is mandatory only if it contains both an express requirement that an action be undertaken within a particular amount of time and a specified consequence for failure to comply with the time limit." State v. Singer, 170 Vt. 346, 348, 749 A.2d 614, 616 (2000) ; see also State v. Skilling, 157 Vt. 647, 647, 595 A.2d 1346, 1347 (1991) (mem.) (holding statute is directory when it does not contain a consequence); In re Mullestein, 148 Vt. 170, 174, 531 A.2d 890, 892-93 (1987) (holding statute governing timing only mandatory if it includes consequence). Neither of the twenty-one-day time limits in § 1205(g) and (h) contain a specified consequence for failure to comply.
¶ 20. These statutory sections are unchanged since Singer. The 2000 statutory amendment that added subsection (t), the subsection on which the majority relies, was not accompanied by changes to subsections (g) and (h). Thus, we can reach the majority's conclusion only if we can find that the Legislature intended to generally change the twenty-one-day time limits in subsections (g) and (h) to mandatory time limits. As the majority acknowledges, there is nothing in the legislative history to *768 show such an intent. There is no record of abuse of these time limits, and no record that the overall forty-two-day limit is inadequate to ensure timely disposition of civil suspension cases. In these circumstances, more should be required than an inference from a statutory amendment that deals only with first offenses and not with the general effect of time limits.
¶ 21. My second major reason relates generally to the policy of establishing mandatory time limits. It is no coincidence that this case arises in Franklin County, ground zero for the major docket pressures caused by opioid addiction. We have written in a Franklin County case that the large increases in the number and difficulty of child protection cases has made it impossible for courts to meet, or even come close to, statutory time limits in those cases, even though the result of delay in those cases is the failure to protect children when they need it the most. See In re A.S., 2016 VT 76, ¶¶ 10-12, 202 Vt. 415, 150 A.3d 197 (per curiam). The flexibility to move resources from one type of case to another has been critical to the judiciary's response to the opioid crisis. Without that flexibility, the processing of juvenile child protection cases would be further delayed, with more harm to children and their development. Increasing resources for processing child protection cases, however, necessarily means reducing resources available for other types of cases and adds to delay in processing those cases. There is no cost-free solution.
¶ 22. In some instances, the Legislature has established time limits on processing particular types of cases. Many of these are advisory because the consequences of case dismissal or mandatory relief are too extreme in relation to the likely results of delay. The most important example of such limits is those in juvenile cases-timely processing of cases is critical, but cases can't be dismissed, leaving children unprotected, if delay occurs.[3] In a few instances, the Legislature has adopted mandatory time limits on judicial action with specific consequences for failure of the judiciary to act within the time limit.
¶ 23. I recognize that the Legislature has the prerogative to establish mandatory time limits, and we have enforced those limits. We want to be sure, however, that the Legislature has understood the consequences of limiting flexibility and has knowingly and clearly done so by specifying the consequence of failing to meet the time standards. We have, therefore, interpreted time limits as mandatory only if the intent to make them mandatory is "clear," and the Legislature has specified the consequences of not meeting the time standard. See In re Mullestein, 148 Vt. at 174, 531 A.2d at 893 (holding legislative intent must be "clearly expressed"); see generally Andrizinsky v. Phillips, 97 Vt. 21, 22, 121 A. 435, 435 (1923) ("The statute contains no words negativing or denying the power to file such list after the time named; nor is there anything in the character of the act to be performed, or in the manner and mode of its performance, or in its effect as to public or private rights, from which it must be presumed that the Legislature contemplated that it better not be performed at all than at any time other than that specified in the statute. The time so specified must therefore be regarded as directory to the municipal judges and not as a limitation of their powers.").
*769 ¶ 24. In this case, the legislative direction to make the time limits mandatory is far from clear; it is based on an inference the majority has drawn from language that does not address the situation before us, the point of my opening paragraph. See ante, ¶ 16 (stating § 1205(t)"implies that the time limits for second offenses in subsections (g) and (h) are mandatory"). Such an inference might be sufficient for other purposes, but I don't believe it meets the standard of clarity we require for a mandatory time limit. Further, no statute specifies the consequence of failing to meet the time standard; the majority has taken the consequence from a different and inapplicable time standard. No statute states that the twenty-one-day time limits are jurisdictional-as the majority holds.[4]
¶ 25. There are two other points I believe are important; both are mentioned in the majority opinion, but neither supports the majority decision. The first is the impact of the majority decision on the forty-two-day time limit in § 1205(h). The presence of the forty-two-day overall time limit is a very clear indication that the Legislature never intended the twenty-one-day limits to be mandatory. Under the majority's decision, the forty-two-day limit is truly surplusage. No case will be dismissed under the forty-two-day limit that would not be dismissed under one or both of the twenty-one-day limits.
¶ 26. Finally, I doubt that the majority's decision will result in earlier resolution of civil suspension proceedings in the vast majority of cases. On this point, I return to the fact that this case comes from Franklin County and a court under great stress in keeping up with caseload demands because of opioid-related child protection cases. In this case, the court was able to hold an early preliminary hearing but was required to regain the time before the final hearing. In order to comply with the majority decision, it is likely that the court will take the full time complement for each component of the process to gain the full forty-two days to complete the hearing process to minimize the adverse impact on the grind of child protection cases. In the end, what should count, as Singer held, is whether the case is completed within the forty-two-day time limit. I doubt that micromanaging the internal steps in the process will benefit anyone.
¶ 27. I would affirm.
¶ 28. I am authorized to state that Chief Justice Reiber joins this dissent.

I strongly disagree with the majority that establishing time limits without consequences is a useless act, "mere surplusage." Ante, ¶ 16. Despite resource limitations, the judges and staff make every effort to meet the time limits where it is possible to do so, and these time limits become standards under which we judge the overall performance of the judiciary and upon which resource allocation decisions are made.

This decision deals directly only with the twenty-one-day time limit in § 1205(h), but it is impossible to read the majority decision as not applying equally to the time limit in § 1205(g).