NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2016 VT 77A

No. 2015-282

| | |
|---|---|
| C&S Wholesale Grocers, Inc. | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Washington Unit, |
| | Civil Division |
| | |
| Department of Taxes | March Term, 2016 |

Mary Miles Teachout, J.

Jon R. Eggleston and Malory S. Lea of Primmer Piper Eggleston & Cramer PC, Burlington, for Plaintiff-Appellant.

William H. Sorrell, Attorney General, and Will S. Baker, Assistant Attorney General, and Bridget C. Asay, Solicitor General, Montpelier, for Defendant-Appellee.

PRESENT: Dooley, Skoglund, Robinson and Eaton, JJ., and Kupersmith, Supr. J. (Ret.), Specially Assigned

¶ 1. **EATON, J.** Taxpayer C&S Wholesale Grocers, Inc., a wholesale grocery distributor, disputes sales tax assessed by the Vermont Department of Taxes on the purchase of reusable fiberglass freezer tubs used in the transport of perishable items, as well as the Department's refusal to refund sales tax paid on diesel fuel used to power refrigeration systems mounted on taxpayer's tractor trailers. Taxpayer also contests the penalty assessed by the Commissioner of the Department of Taxes, arguing that it is unreasonable. We affirm.

¶ 2. Taxpayer is a Vermont corporation, headquartered in Keene, New Hampshire. As the nation's largest wholesale grocer, taxpayer purchases inventory from manufacturers and other suppliers before reselling it to national supermarket chains and local independent grocers.

Since 1981, taxpayer has maintained a warehouse in Vermont that supplies its New England and New York State customers. Serving as a middleman between manufacturers and grocery stores, taxpayer's inventory includes products requiring refrigeration for freshness and safety reasons. To maintain the temperature of the product requiring refrigeration, taxpayer transports perishable products in large rectangular fiberglass tubs, referred to as "freezer tubs," which are packed with dry ice and loaded into refrigerated tractor-trailers. The tractor-trailers, or "reefers," are insulated and mounted with a refrigeration system that runs on diesel fuel, or "reefer fuel."

¶ 3. The freezer tubs, which vary in size, are insulated with fiberglass or foam and have a hard plastic outer shell. Boxes of frozen food are stacked on a wooden pallet and covered with dry ice, which is then wrapped in a large plastic bag, or shroud. The shrouded package is then placed in the freezer tubs, which are then loaded onto taxpayer's tractor-trailer delivery trucks, which typically make between two and seven stops to various grocer customers. During delivery, the freezer tubs are unloaded and the plastic shrouds are cut off the pallets before the boxes of frozen food are removed and taken into the store. Empty freezer tubs are not given or transferred to the grocer customer, and are not used by the customer in any way; they are taken back by taxpayer for re-use.

¶ 4. Taxpayer typically uses each freezer tub for a period of three to five years. Despite this lifespan, some of the freezer tubs may be damaged by heavy warehouse equipment or lost and last less than three years, and still others may last longer.

¶ 5. Each of taxpayer's reefers has a fuel tank, separate from the tractor-trailer's fuel tank. The fuel tank is used only to power the tractor-trailer's refrigeration unit, which in turn keeps the tractor-trailer cool. Unlike the diesel fuel for the tractor-trailers themselves, the reefer fuel is dyed red and held in tanks marked "for off-road use only." It is illegal to use reefer fuel to propel the tractor-trailers on public roads and highways.

¶ 6.    During an audit, the Department identified that no sales or use tax was paid on the thousands of freezer tubs owned by taxpayer, which it found were not exempted as packaging under 32 V.S.A. § 9741(16), which exempts "[m]aterials, containers, labels, sacks, cans, boxes, drums, or bags and other packing, packaging, or shipping materials for use in packing, packaging, or shipping tangible personal property by a manufacturer or distributor." The Department assessed sales and use tax of $30,562 for these freezer tubs for the period from October 1, 2009, through September 30, 2012, as well as a penalty under 32 V.S.A. § 3202(b)(3). Also during the audit, when asked by the Department whether they had paid sales tax on the reefer fuel, taxpayer answered in the affirmative.

¶ 7.    On March 26, 2014, the Department held an administrative hearing regarding taxpayer's protest of that tax assessment for the freezer tubs and its denial of taxpayer's request for a sales tax refund for the reefer fuel. The Commissioner of the Department of Taxes considered whether freezer tubs and reefer fuel were exempt from the Vermont sales and use tax under the packing and shipping materials exemption in 32 V.S.A. § 9741(16). The Department found that taxpayer's freezer tubs did not qualify as shipping materials exempt from sales and use tax under 32 V.S.A. § 9741(16). Considering the freezer tubs in the context of its regulations, which define "packing, packaging or shipping materials" as "the articles and devices used in packing, packaging or shipping tangible personal property such as containers, bags, labels, gummed tapes, bottles, drums, cartons, bubble wrap and sacks," and exempt "[i]tems of returnable and reusable packaging as long as the packaging has a limited life expectancy (not more than three years)," Sales and Use Tax Regulations § 1.9741(16)-2, Code of Vt. Rules 10 060 033 [Hereinafter Tax. Dept. Reg.], the Commissioner found that the freezer tubs are not exempt as they "are returned to the taxpayer and reused, and have an expected life greater than three years, and so, under the regulations, are not exempt." As to the reefer fuel, the

3

Commissioner found that it "is not a container or packing material, is not a component of the parcel which conveys to the customer, and is not exempt."

¶ 8. After the hearing, taxpayer filed a written request for a refund of the sales tax paid on the reefer fuel. The Department formally denied the request. Taxpayer appealed both determinations, and the parties stipulated to a consolidation of the appeals. Thereafter, taxpayer appealed the Department's adverse determination regarding the freezer tubs and reefer fuel to the trial court. Following the trial court's decision affirming the Commissioner's determination, taxpayer appealed to this Court.

¶ 9. On appeal, taxpayer challenges both the Commissioner's interpretation of the exemption in 32 V.S.A. § 9741(16), arguing that the statute does not limit the type of materials or containers used to pack or ship, and her decision upholding the penalty assessed against taxpayer. The State disagrees with these arguments, asserting that the Commissioner correctly construed the packaging exemption to the sales and use tax when it found that the statute does not exempt all materials used to transport goods, but only that packaging which stays with the customer. Although the State acknowledges that the exemption includes some returnable and reusable packaging, such packaging must have a life expectancy of less than three years.

¶ 10. We review the Commissioner's decision directly, independent of the superior court's conclusions. In re Williston Inn Grp., 2008 VT 47, ¶ 11, 183 Vt. 621, 949 A.2d 1073 (mem.). Moreover, because we are "traditionally reluctant to substitute our judgment for the experience and expertise of an agency," Lemieux v. Tri–State Lotto Comm'n, 164 Vt. 110, 112, 666 A.2d 1170, 1172 (1995), we apply a deferential standard of review to agency decisions, see, e.g., Gasoline Marketers of Vt., Inc. v. Agency of Natural Res., 169 Vt. 504, 508, 739 A.2d 1230, 1233 (1999) ("[A]bsent a clear and convincing showing to the contrary, decisions made within the expertise of administrative agencies are presumed to be correct, valid, and reasonable." (citation omitted)). We therefore uphold the Commissioner's interpretation of tax

4

statutes absent "compelling indication of error." Williston Inn Grp., 2008 VT 47, ¶ 12. This deference extends to the Commissioner's interpretation of Department regulations, "as much out of a concern for the proper separation of powers as in consideration of agency expertise." Id. ¶ 13 (quotation omitted).

¶ 11. This Court recognizes the general rule that tax exemptions are strictly construed against the taxpayer, but "the construction must not defeat the purposes of the statute." Tarrant v. Dep't of Taxes, 169 Vt. 189, 197, 733 A.2d 733, 739 (1999) (citing Stephens v. Dep't of Taxes, 134 Vt. 178, 180, 353 A.2d 355, 356 (1976)). Although it is the taxpayer's burden to "clearly establish[] the exemption beyond a reasonable doubt," World Publ'ns, Inc. v. Vermont Dep't of Taxes, 2012 VT 78, ¶ 8, 192 Vt. 547, 60 A.3d 942 (quoting Ragland v. K-Mart Corp., 624 S.W.2d 430, 432 (1981)), we will resolve any ambiguities in favor of the taxpayer. Int'l Bus. Machs. Corp. v. Dep't of Taxes, 133 Vt. 269, 277, 336 A.2d 158, 163 (1975).

¶ 12. We begin by addressing taxpayer's challenges to the Commissioner's interpretation of § 9741(16): (1) that under the plain language of the statute, the freezer tubs are exempt as "containers"; (2) that the Department's inconsistent interpretation of the exemption should not be entitled to deference by this Court; and (3) that the Department's regulation limiting the exemption to include materials with a life span of less than three years is arbitrary and capricious.

¶ 13. The issue before the Court is whether the freezer tubs used by taxpayer in distributing perishable groceries qualify as containers, packaging, or shipping materials under the meaning of the statute. The resolution of whether taxpayer's freezer tubs are exempt as packaging and shipping materials turns on the construction of 32 V.S.A. § 9741(16). We defer to agency interpretations of statutes the Legislature has entrusted to their administration, and absent compelling indication of error, we uphold the Commissioner's interpretation of tax statutes. See, e.g., Town of Killington v. State, 172 Vt. 182, 192, 776 A.2d 395, 403 (2001);

5

Tarrant v. Dep't of Taxes, 169 Vt. 189, 195, 733 A.2d 733, 738 (1999); In re Agency of Admin., 141 Vt. 68, 74, 444 A.2d 1349, 1351 (1982). When construing a statute, our primary objective is to effectuate the intent of the Legislature. Spears v. Town of Enosburg, 153 Vt. 259, 261, 571 A.2d 604, 605 (1989). We begin with the presumption that the Legislature intended the statutory language to carry its plain, ordinary meaning. State v. Harty, 147 Vt. 400, 402, 518 A.2d 30, 31 (1986). Where the meaning of the statute is plain on its face, this Court will enforce the statute according to its terms. See Hill v. Conway, 143 Vt. 91, 93, 463 A.2d 232, 233 (1983) (noting that where statute's meaning is plain on its face, "there is no need for construction; the legislative intent is to be ascertained from the act itself.").

¶ 14.  Generally, Vermont imposes a sales tax on retail sales within the state. 32 V.S.A. § 9771. Certain items, however, are exempt from sales tax, including:

> Materials, containers, labels, sacks, cans, boxes, drums, or bags and other packing, packaging, or shipping materials for use in packing, packaging, or shipping tangible personal property by a manufacturer or distributor.

32 V.S.A. § 9741(16). In considering this exemption, which is potentially extremely broad if it applies to anything involved in packing, packaging, or shipping, we are aided by reference to the Department's regulations, adopted in accordance with Chapter 25 of Title 3, the Administrative Procedure Act. See 3 V.S.A. §§ 836-844. These regulations are "valid and binding" with "the force of law." 3 V.S.A. § 845(a). Regulations constitute "prima facie evidence of the proper interpretation of the matter that they refer to." Wetterau, Inc. v. Dep't of Taxes, 141 Vt. 324, 328, 449 A.2d 896, 898 (1982) (quoting 3 V.S.A. § 845(a)).

¶ 15.  The Department's regulations define "packing, packaging or shipping materials" as "the articles and devices used in packing, packaging or shipping tangible personal property such as containers, bags, labels, gummed tapes, bottles, drums, cartons, bubble wrap and sacks." Tax Dept. Reg. 1.9741(16)-2. In addition to providing a definition of packing, packaging, or shipping materials, the regulation establishes an exemption from the sales tax for "[i]tems of

6

returnable and reusable packaging . . . as long as the packaging has a limited life expectancy (not more than three years)." Id. Items of returnable and reusable packaging includes packaging that "may be returned to and reused by the manufacturer or distributor," such as "pallets, reels and skids used for holding tangible personal property during shipment, beer kegs, and water containers." Id.

¶ 16.   We are further aided by the Department's 1998 Technical Bulletin, TB-11, which explains the scope of the exemption and the Board's longstanding "position that returnable and reusable packaging is not exempt from the sales and use tax." Vermont Department of Taxes, Technical Bulletin 11, 1 (1998), http://tax.vermont.gov/sites/tax/files/documents/TB11.pdf [https://perma.cc/SAG5-HHH3] [Hereinafter TB-11].   Packing, packaging, and shipping materials that will continue down the stream of commerce are not taxed, while durable equipment that has come to rest in the stream of commerce can be taxed to the manufacturer or distributor without the risk of double taxation.   The Department further provided that this exclusion is supported by the purpose of the exemption, which is to prevent double taxation:

> The rationale for the exemption is that packaging is ordinarily 7 transferred to the retail customer as part of the sale and it is part of the taxable base.  There the same packaging should be exempt at the manufacturing or distributor level to avoid taxing it twice.  In contrast, returnable or reusable returnable or reusable packaging which is not permanently transferred to a retail customer does not become part of the taxable base.  Therefore, the exemption has extended only to materials that were transferred to the buyer with the product; and returnable or reusable materials used by the manufacturers or distributors in getting their product to the market have not been exempt.

TB-11 at 1 (footnote omitted).

¶ 17.   By its plain language, the exemption contains extremely broad and generalized language.  To interpret the exemption as applying to all things that ultimately enclose tangible personal property in shipping, however, would create unintended results—the exception would literally swallow the rule if § 9741(16) was construed to exempt every material used in any way

7

in packing, packaging, or shipping. See In re Middlebury Coll. Sales & Use Tax, 137 Vt. 28, 31, 400 A.2d 965, 967 (1979) ("Exemptions from taxation are to be strictly construed"). Considering the structure of the exemption, however, with support from the regulation, it is clear that the Legislature did not intend the terms to be interpreted in their broadest possible sense. This is evidenced by the manner in which the Legislature structured the exemption, the regulation's definitions and exclusions, and by practical considerations.

¶ 18. First, the exemption is structured such that particular terms—materials, containers, labels, sacks, cans, boxes, drums, or bags—precede more general terms—packing, packaging, or shipping materials. Although the statute fails to define these crucial terms, the Department's regulations provide some clarification, defining "packing, packaging or shipping materials" as "the articles and devices used in packing, packaging or shipping tangible personal property such as containers, bags, labels, gummed tapes, bottles, drums, cartons, bubble wrap and sacks." Tax Dept. Reg. 1.9741(16)-2. To exempt all containers, as urged by taxpayer, is not within the necessary scope of the statute. See In re Middlebury Coll., 137 Vt. at 31, 400 A.2d at 967. The sales tax is designed to be imposed on the ultimate user. See Hadwen, Inc. v. Dep't of Taxes, 139 Vt. 37, 43, 422 A.2d 255, 259 (1980) (explaining that provisions of § 9741 are intended to prevent multiple taxation during manufacture and production of goods and that "[t]he sale to the ultimate user is used as the measuring point for the imposition of the tax"). Narrowly construing the statute, as we must, the exemption is thus limited to components of the parcel being shipped. The freezer tubs do not move through the stream of commerce; they are returned to taxpayer to be used again. If the exemption applies to the freezer tubs they will not be taxed at any point in the distribution process.

¶ 19. Second, practically speaking, a limited reading of the scope of the statute prevents an overly broad construction of the exemption. An overly broad construction would bring within its scope all materials, containers, labels, sacks, cans, boxes, drums, or bags, as well as all

8

packing, packaging, or shipping materials, regardless of whether they were components of the parcel to be shipped. This would have the potential to include under its purview all objects used to transport or hold something, such as the tractor-trailer trucks transporting taxpayer's goods across New England, the freezer units and storage racks at the warehouse used to hold the goods until loaded, and the warehouse itself, which is, in the broadest sense, a "container" when it holds goods for shipment. The Legislature clearly did not intend to include anything that could be envisioned as a container—a nearly limitless set of items—in the exemption. This would result in an exemption that allows words "to prevail over common sense." McClure Newspapers, Inc. v. Vt. Dep't of Taxes, 132 Vt. 169, 173, 315 A.2d 452, 454 (1974) ("[w]e [do not] allow words … to prevail over common sense."); see also TD Banknorth, N.A. v. Dep't of Taxes, 2008 VT 120, ¶ 32, 185 Vt. 45, 967 A.2d 1148 (noting the general "presumption . . . against a statutory construction that would lead to . . . absurd results" (quotation omitted)).

¶ 20. Finally, not only would an overly inclusive and broad reading of the exemption have widespread application, it would also contravene the purpose of the statute. As stated above, in TB-11 the Department explained that it is the purpose of the exemption to prevent double taxation. See 67B Am. Jur. 2d Sales and Use Taxes § 104 ("The purpose of exempting from the sales tax such intermediate sales of containers and packaging materials is to avoid double taxation and to prevent the increase of the ultimate sales price to the consumer, for the consumer pays the whole tax reflected in the price which he or she pays for the finished product."). It is not the purpose of the exemption that certain materials used in packing, packaging, or shipping be exempt from tax altogether. TB-11 at 1 (footnote omitted); see also Wetterau, 141 Vt. at 330, 449 A.2d at 899 ("The sales tax is designed to be imposed on the ultimate user." (citation omitted)). For this reason, returnable and reusable packaging materials that have come to rest in the stream of commerce should be taxed to the distributor or manufacturer, lest they avoid taxation altogether, whereas packing, packaging, and shipping

materials that will continue down the stream of commerce are not taxed to the manufacturer or transporter and are instead taxed where they come to rest in the stream of commerce as part of the taxable base of the product.

¶ 21.    Applying this interpretation to taxpayer's appeal, we do not find the freezer tubs to be within the scope of the exemption.  Although the freezer tubs are "containers," this is so under only the broadest sense of the words.[1]  The tubs are not a component of the parcel to be shipped any more than the tractor-trailer itself; rather, they are a component <u>used</u> in shipping and then reused again by taxpayer.[2]  If taxed to taxpayer, there is no risk of double taxation—if taxpayer does not pay tax on the freezer tubs, however, they will go completely untaxed.

¶ 22.    In reaching her conclusion, the Commissioner looked to the language of the exemption, considering the context provided by the Department's regulations, for resolution, and we cannot now find her conclusion to be incorrect, invalid, or unreasonable.  The Commissioner considered whether taxpayer's freezer tubs are containers within the meaning of the plain language of statute with guidance from the regulation.[3]  More specifically, she considered the

---

[1]    The American Heritage Dictionary defines "container" as "a receptacle in which material is held or carried."  American Heritage Dictionary 330 (2000).

[2]    Section 9741(16) was amended in 1974.  See 1973, No. 270 (Adj. Sess.), § 2.  Prior to this amendment, the statute exempted: "Materials, containers, labels, sacks, cans, boxes, drums, or bags and other packing, packaging, or shipping materials for use in packing, packaging, or shipping tangible personal property <u>for resale</u>."  See 32 V.S.A. § 9741(16) (1981) (emphasis added).  The deletion of the words "for resale" neither precludes nor mandates that items that do not continue down the stream of commerce fall within the exemption; the amendment clarifies that some items which do not pass down the stream of commerce may nonetheless be exempt.  See <u>Standard Register Co. v. Comm'r of Taxes</u>, 135 Vt. 271, 274, 376 A.2d 41, 43 (1977) (stating that "materials sold to a manufacturer and used for shipping its product [after 1974] are exempt from tax, as fully as materials sold [to it] for incorporation into the product itself").  This does not mean, however, that we cannot consider the items themselves, whether or not they continue on in the stream of commerce, to determine whether they are materials or containers used for shipping

[3]    As stated in <u>supra</u>, n. 2, <u>Standard Register</u> does not stand for the proposition that any item used in the shipment of goods is exempt under § 9741(16).  Such broad terms require some limitation, lest the exemption swallow the rule.  Further, we note that because the sales at issue in <u>Standard Register</u> fell under the statute's original language, and not under the amended language,

10

scope of the packaging exemption in that context, and whether it applies to all containers, irrespective of their function or use. The Commissioner's construction of the § 9741(16) is neither inherently unreasonable nor arbitrary. For these reasons, we cannot find that taxpayer has met its burden of showing why the freezer tubs should be exempt from sales tax with evidence that the Commissioner's decision was incorrect, invalid, or unreasonable. See Gasoline Marketers of Vt., 169 Vt. at 508, 739 A.2d at 1233 ("[A]bsent a clear and convincing showing to the contrary, decisions made within the expertise of administrative agencies are presumed to be correct, valid, and reasonable." (citation omitted)). Even resolving ambiguities in the taxpayer's favor, we cannot find that taxpayer met the burden of establishing the exemption "beyond a reasonable doubt." World Publ'ns, 2012 VT 78, ¶ 8.

¶ 23. Taxpayer also argues that the Department's "three-year rule" is invalid.[4] The three-year rule was adopted in response to an increase in the use of disposable materials, an unintended consequence of the exclusion of returnable and reusable packaging in Regulation 1.9741(16). See TB-11 at 2. The Department adopted the position exempting returnable and reusable packaging with a life expectancy of less than three years to incentivize the use of recyclable materials "while still giving effect to the apparent intent of the exemption, i.e., to exempt packaging not equipment." Id. As under the Regulation 1.9741(16)-2, the Department considered items with a life expectancy greater than three years to be "equipment which is used and consumed by the manufacturer or distributor and is therefore properly taxed to that party." TB-11 at 2.

---

our discussion of the effect of the statutory amendment in that case was dicta. See Standard Register, 135 Vt. at 274, 376 A.2d at 43 ("A result contrary to the one we have here reached is, however, dictated by a 1973 amendment of the exemption in question, as to sales after its effective date.").

[4] Consistent with supra, n.2, the Department would have had no reason to establish the three-year rule if all reusable items were exempt from the tax. The existence of the regulation demonstrates that the Department did not interpret the 1974 amendment as exempting all items used in shipping. TB-11 also supports this position.

¶ 24.   Taxpayer argues that not only is the three-year rule without statutory basis, but that the Department lacked the authority to adopt the exception in the first place.  In 1974, the Department adopted a version of the regulation that limited the exemption to "[i]tems of returnable and reusable packaging as long as the packaging has a limited life expectancy (not more than three years)."  Tax Dept. Reg. 1.9741(16)-2.  In its 1998 Technical Bulletin, the Department explained that it had adopted the three-year rule to "accommodate [the exclusion for returnable and reusable items] while still giving effect to the apparent effect of the exemption, i.e., to exempt packaging not equipment."  TB-11 at 2.  The Department lamented that although that approach "affords a bright line for administering the exemption, an unintended consequence . . . is to favor the use of disposable materials over recyclable materials."  Id.  To incentivize the use of recyclable materials "while still giving effect to the apparent intent of the exemption, i.e., to exempt packaging not equipment," the Department adopted a position exempting returnable and reusable packaging with a life expectancy of less than three years.  Id.  As under the 1974 regulation, the Department considered items with a life expectancy greater than three years to be "equipment which is used and consumed by the manufacturer or distributor and is therefore properly taxed to that party."  Id.

¶ 25.   Because the three-year rule affects only those returnable items with a life expectancy of three years or less, Regulation 1.9741(16)-2's longstanding exclusion of other returnable and reusable packaging remains unchanged.  The Court declines to address taxpayer's challenge to the three-year rule because it has no effect on this case: the freezer tubs have a life expectancy of more than three years and are thus excluded regardless of the rule.  The Department's application of the rule, whether it has been consistent or inconsistent, is therefore irrelevant to the facts of this case, and we decline to address its validity.  See Fuller v. Watkins, 117 Vt. 257, 262, 90 A.2d 444, 447 (1952) (providing that the Court does not "comment upon abstract principles of law in the absence of some showing of facts to which they might apply.").

That the Commissioner may not have had the authority to exempt returnables having a useful life of three years or less from taxation does not mean the regulation is invalid as to those items having a useful life of greater than three years.

¶ 26.  Having addressed taxpayer's challenge to the Commissioner's interpretation of the exemption in § 9741(16) as it applies to the freezer tubs, we consider taxpayer's challenge to the Commissioner's interpretation of the exemption as it applies to reefer fuel.  Taxpayer argues that under the plain language of the statute, the reefer fuel is exempt as "shipping material."  As stated above, the exemption does not apply to unlimited types of shipping materials.  Although the reefer fuel is a "material," this is so only under the broadest sense of the word.[5]  Rather than being a component of the parcel to be shipped, it is a component used in shipping—one that does not transfer to the grocery stores and has come to rest with taxpayer in the stream of commerce.  Because it does not continue down the stream of commerce, the reefer fuel can be taxed to taxpayer without the risk of double taxation.  We hold that reefer fuel is not exempt from sales tax under 32 V.S.A. § 9741(16).

¶ 27.  Finally, taxpayer challenges the Commissioner's decision upholding the penalty assessed against it, arguing that the Commissioner abused her discretion by upholding an unreasonable penalty where taxpayer acted in good faith.  Citing its full cooperation with the audit process and its record of positive voluntary compliance with the State, taxpayer contends that the liability arising from the audit is based on a misunderstanding as to the scope of the exemption—specifically, a misunderstanding caused by the lack of clarity in the exemption's language.  The State disagrees and argues that because taxpayer first contested the penalties in its reply brief before the superior court, the argument was not properly preserved for review.

¶ 28.  Preservation requires a party to "present the issue with specificity and clarity" to give the original forum "a fair opportunity to rule on it."  State v. Ben-Mont Corp., 163 Vt. 53,

---

[5]  The American Heritage Dictionary defines "material" as "composed of or pertaining to physical substances; relating to matter."  American Heritage Dictionary 316, 772 (2d ed. 1982).

61, 652 A.2d 1004, 1009 (1994). Issues raised for the first time in a reply brief are not preserved for review. Agency of Nat. Res. v. Glens Falls Ins. Co., 169 Vt. 426, 435, 736 A.2d 768, 774 (1999) (holding additional claim raised in reply brief not preserved for appellate review). Taxpayer did not raise this argument in its memorandum to the Commissioner, and it was not addressed in the Commissioner's determination. The issue is thus not appropriate for our review.[6]

Affirmed.

FOR THE COURT:

_____

Associate Justice

---

[6] Although taxpayer attempts to justify its failure to meet its tax obligation by arguing that its non-payment was in "good faith," this is not a defense to the penalty assessed. The penalty was assessed pursuant to the "failure to pay" provision in 32 V.S.A. § 3202(b)(3). Thus, the failure to pay is itself the basis for the imposition of the penalty. See TD Banknorth, N.A. v. Dep't of Taxes, 2008 VT 120, ¶ 37, 185 Vt. 45, 967 A.2d 1148 (stating that plain meaning authorizes the penalty "on a taxpayer who has not paid his or her 'tax liability' in full, imposing no restrictions on the application of the penalty for particular types of tax avoidance or underpayment."). It is the purpose of this penalty "to enable the Commissioner to penalize taxpayers when they have not properly discharged their tax burden." Id. Even if taxpayer's argument was properly preserved, because taxpayer failed to pay the tax, regardless of its acting in good faith in doing so, the imposition of the penalty was not error.